## OSCAR SEITZ, et al., v. UNION PACIFIC RAILWAY CO.

1. LIENS OF VENDOR, AND OF MECHANIC; *Priority, Where Vendor Reserves Legal Title as Security.* The railway company owned three lots in the city of Salina. Mrs. B. desired to build a hotel on them. The parties thereupon agreed that Mrs. B. should build and furnish said hotel, that the railway company should advance some money by way of a loan to assist her in building and furnishing the same, and that when she should build and furnish it, and pay back to the railway company the amount of money advanced by the company to her, the company would then execute a deed, conveying to her the full legal title to the property. Under this contract the railway company furnished to Mrs. B. the sum of $7,512.85, and she built and furnished said hotel. But she has never yet refunded said sum of money, or any part thereof; and the company has never yet executed to her a deed for said property. Said contract between the railway company and Mrs. B. was originally entirely in parol. But subsequently, and on November 4th 1867, Mrs. B. gave to the railway company her two promissory notes for said amount of money,

and also gave a mortgage on the hotel property and on the furniture therein to secure the payment of said notes. The original parol contract was not in any other manner disturbed or altered by these transactions. While Mrs. B. was building said hotel she obtained labor and material therefor from the defendants below (plaintiffs in error.) The defendants below afterward duly filed statements for mechanic's liens on said property, under the provisions of ch. 137 of Compiled Laws of 1862. These claims of the defendants have never been paid or satisfied. The court below held that these claims were valid liens upon the property, but also held that they were subsequent to the lien of the railway company thereon. When the contracts for furnishing said labor and materials were made is not shown. Whether any of them were made before the railway company furnished said money is not shown. Therefore, in support of the decision of the court below, it should be presumed that said contracts for labor and materials were made after the money was furnished. Some of the defendants furnished labor and materials before said mortgage was executed, and some of them afterward. The judgment of the court below was, that the property should be sold, and that the claim of the railway company should be first paid from the proceeds thereof. *Held*, that the judgment of the court below was correct.

2. MECHANIC'S-LIEN LAW OF 1862, *Construed.* The mechanic's-lien law of 1862, taken all together, undoubtedly means, that a mechanic's lien shall operate upon the whole of the estate which the person procuring the labor and materials may have in and to the property for which he procures the same, whatever may be the character of that estate, but that such lien cannot operate upon anything more than such estate, and that so far as it does operate it is the paramount lien upon the enhanced value given to such estate by the labor and materials. That is, it is the paramount lien upon the surplus value of the estate, over and above what would have been the value of such estate without such labor and materials.

3. ———— *Extent and Effect of Lien.* Where a person holding an equitable estate in and to certain real estate, and not holding the legal estate, made improvements on such estate, and afterward mechanics' liens were filed thereon under the mechanic's-lien law of 1862 to secure payment for labor and materials furnished in making said improvements, said liens operate upon the said equitable estate only, and do not reach the legal estate, or affect the rights of the party holding the legal title.

*Error from Saline District Court.*

THE *Railway Company* brought its action in June 1868, to foreclose a mortgage. It made Mary A. Bickerdyke,

H. D. Rush, *Alonzo B. Chapman*, Lorenzo D. Bower, *Benj. Howard, Oscar Seitz, Miller & Stevens, Jacob De Witt, Hamlin & Woolley,* and Palmer, Fuller & Co., defendants. Mrs. Bickerdyke was the mortgagor. The other defendants were joined as having some claim or lien on the mortgaged premises subsequently to the claim of the plaintiff. Trial at the October Term 1870 of the district court, J. H., judge *pro tem.,* presiding. An agreed statement of facts was filed, among which are the following:

"In 1867 the defendant Mary A. Bickerdyke commenced erecting a building for a hotel, and other buildings appurtenant thereto, for herself, on the lots of the plaintiff company, described in the petition in this case, their title thereto then being of record. Said hotel building was finished in March 1868. The money furnished by the plaintiff for materials for said building, and for the furniture purchased and owned by said Mary A. Bickerdyke, was furnished and paid at various times during the summer of 1867, and previous to November 4th 1867. Said building was erected with the knowledge of the plaintiff, and on the understanding that on the erection of said building, and on the payment of all her indebtedness to the plaintiff, said Mary A. Bickerdyke should have a title to said lots, but without any definite contract, until the giving of the mortgage specified in the petition. Said mortgage was given by said Mary A. Bickerdyke on the 4th of November 1867, to said plaintiff, on said lots and hotel-building and furniture, for the sum of $7,512.85, the amount of money previously advanced as aforesaid by the plaintiff, and payable as stated in said petition and mortgage.

"The defendants hereinafter named have each recovered a judgment in this court against said Mary A. Bickerdyke for the several amounts hereinafter named, and each on a contract with said Mary A. Bickerdyke, and for labor done and materials furnished on and for said buildings on said lots. Each of said defendants did within six months after the completion of said buildings, file a mechanic's lien on said buildings for said labor and materials, and each commenced his action within twelve months after the completion of said buildings.

"The following is a statement of the judgments obtained by said defendants: H. D. Rush, March term 1868, for

$1289.93; Palmer, Fuller & Co., September term 1868, for $2510.15; A. B. Chapman, March term 1869, for $626.69; L. D. Bower, March term 1869, for $354.30; Benj. Howard, September term 1868, for $213.87; Oscar Seitz, September term 1868, for $165.89; Miller & Stevens, September term 1868, for $400; and Jacob DeWitt, September term 1868, for $227.57. Said judgments of H. D. Rush, and Palmer, Fuller & Co., have been sold and assigned to the plaintiff.

"It is agreed that the following claims and parts of claims, included in the foregoing judgments, namely, B. Howard, $213.87; Palmer, Fuller & Co., $359.43; A. B. Chapman, $68; L. D. Bower, $198; Oscar Seitz, $28.50; Miller & Stevens, $400, and Jacob DeWitt, $169.87, originated since the date of the plaintiff's mortgage; and that all the claims of said defendants, as first above stated, exclusive of the several claims and amounts last above stated, originated before the date of the said mortgage."

The district court held that the lien of the *Railway Company* was the first and paramount lien on the mortgaged premises, and a decree was entered that said premises be sold, "and the proceeds of said sale be first applied to the payment of the costs of suit; second, to the payment of the plaintiff's judgment and claim in full; and that the residue be applied to the payment of the claims and judgments of other lien-holders and judgment creditors *pro rata*," specifying such other liens in order and amount as first stated in the agreed facts. From this decree defendants *Seitz, Chapman, Howard, Miller & Stevens*, and *De Witt*, appeal, and bring the case here on error. The *Railway Company* only is made defendant in error.

*C. A. Hiller*, for plaintiffs in error:

The mechanics' liens were prior to the defendant's mortgage. Defendant in error is estopped from denying the plaintiffs' claims. The liens of plaintiffs in error, prior and subsequent to defendant's mortgage, should be distinguished. The personalty should be deducted from the mortgage of defendant in error.

The mechanics' liens are prior to the mortgage-deed. The

mechanics' liens were based on the law approved March 4th 1862, Comp. Laws, 680, ch. 137. Section 17 of this lien law says that the lien shall be a preferred claim on the building, and *previous incumbrancers* and *creditors* must look to the land. Defendant in error never took any steps under the lien law; hence it is a *previous* incumbrancer or creditor.

The general practice is, to give a liberal construction to the lien laws in favor of the mechanic or material-man. 10 Wend. 375; 2 Miss. 874; Houck on Liens, 85; 46 Mo. 595. The court below erred in applying the 14th section of the law to the case, and ignoring the 17th section. The case of *Smith v. Moore*, 26 Ill. 392, is precisely in point. And the building and lots should be divided, and sold only when it can be done without injury; otherwise the value of each should be found, and proceeds of the sale divided proportionably. Defendant Bickerdyke was the owner of the premises when the liens attached. 4 Scam. 531; 17 Ill. 301.

Defendant in error, by accepting a mortgage from Mrs. Bickerdyke is estopped from denying her title as against her and the lien-men claiming through her; and is further estopped by permitting the erection of this building, having knowledge thereof. A mortgage or other incumbrance may give rise to an estoppel; 14 Cal. 612. Now, defendant in error by accepting and placing on record its mortgage from defendant Bickerdyke, acknowledged her title to all the world, and cannot now contest it. But the case is still stronger against the railway company, if it is the owner, and permitted work to go on from which it alone obtains the benefits, and afterward sets up its title to defeat the mechanics' liens. The maxim, *Qui tacet consentire videtur*, applies here. Passive knowledge is sufficient in such cases. 14 Ill. 269; 1 Johns. Ch. 344; 23 Ill. 88; 14 Wis. 281; 3 Ohio St. 344; 14 Cal. 247.

If our rule of distribution be true, the claims admitted prior to the mortgage by the agreed statement, must be first satisfied: 2 Ohio St. 114. The other lien-men look to the building, and the mortgagee must look to the land for its

10—16 KAS.

claims. Yet no distinction between the lien-holders was made by the court below.

*J. P. Usher*, and *C. E. Bretherton*, for defendant in error:

1. The petition in error is brought by part only of the defendants below, and hence is defective. Bickerdyke, Rush, and others of the defendants, are not parties to the petition in error, either as plaintiff or defendant. It is well settled, that all parties interested in the judgment which it is sought to reverse, must be brought before the court, and if they are not, a motion to dismiss the petition will be sustained. Nash's Practice, 4th ed., 1258; 13 Ohio St. 568; 14 Ohio St. 287; 22 Ohio St. 131; 10 Kas. 204, 394.

2. It is evident that the plaintiffs in error can only sustain the substantial proposition of their case, which is thus stated in the fifth assignment in their petition, "That the court erred in its decision that the claims and interests of the defendants in error were prior and superior liens to the claims of the plaintiffs in error upon the buildings and additions upon said lands erected and constructed," by demonstrating that their liens gave them a better title against defendant in error than Bickerdyke herself possessed. Bickerdyke could only acquire title to the premises by performing her agreement or understanding with defendants, set forth in the findings of the court, to-wit, "On the understanding that on the erection of said building, and on payment of all her indebtedness to the plaintiff," (now defendant in error,) "said Mrs. M. A. Bickerdyke should have a title to said lots."

There is not in the case before us any question of priority between mortgagees and mechanic's-lien holders. The 17th section of the law of 1862 has no bearing on the questions involved in it. The debt of Bickerdyke to defendants in error was the very root of her title, and it is absurd that any one should claim under her and yet attempt to repudiate that debt. The lienholders' position, as against an owner having other than a fee-simple title, is defined by § 14 of that act; and all they can claim is, to have sold "whatever right or

estate such owner had in the land at the time of making the contract," and no more.   The exact question we now discuss came before this court in *Harsh v. Morgan,* 1 Kas. 293, under the act of 1859, the 17th section of which is identical with § 14 of the act of 1862.

The opinion of the court was delivered by

VALENTINE, J.: The petition in error in this case ought probably to be dismissed because of a defect of parties in this court.   But as we think the judgment of the court below is correct, we shall pass over the question of dismissal, without deciding it, and proceed to consider such questions as are involved in the merits of the case.   The facts of the case are substantially as follows: The Union Pacific Railway Company, Eastern Division, owned three lots in the city of Salina. Mrs. M. A. Bickerdyke desired to build a hotel on them. The parties thereupon agreed that Mrs. Bickerdyke should build and furnish said hotel, that the railway company should advance some money by way of a loan to assist her in building and furnishing the same, and that when she should build and furnish it, and pay back to the railway company the amount of money advanced by the company to her, the company would then execute a deed conveying to her the full legal title to the property.   Under this contract the railway company furnished to Mrs. Bickerdyke the sum of $7,512.85, and she built and furnished said hotel.   But she has never yet refunded said sum of money, or any part thereof, and the company has never yet executed to her a deed for said property.   Said contract between the railway company and Mrs. Bickerdyke was originally entirely in parol.   But subsequently, and on November 4th 1867, Mrs. Bickerdyke gave to the railway company her two promissory notes for said amount of money, and also gave a mortgage on the hotel property and on the furniture therein to secure the payment of said notes. The original parol contract was not however in any other manner disturbed or altered by these transactions.   While Mrs. Bickerdyke was building said hotel she obtained labor

and materials therefor from the defendants below, plaintiffs in error. The defendants below afterward duly filed statements for mechanics' liens on said property under the provisions of the statutes of 1862. (Comp. Laws, 680, et seq.) These claims of the defendants have never been paid or satisfied. The court below held that these claims were valid liens upon the property, but also held that they were subsequent to the lien of the plaintiff (the railway company) thereon. When the contracts for furnishing said labor and materials were made, is not shown. Whether any of them were made before the railway company furnished said money, is not shown. Therefore, in support of the decision of the court below we should presume that said contracts for labor and materials were made after the money was furnished, although probably it would make no difference in the decision of this case whether they were made before or afterward. Some of the defendants furnished labor and materials before said mortgage was executed, and some of them afterward. The judgment of the court below was, that the property should be sold and that the claim of the railway company should be first paid from the proceeds thereof. Of this the defendants (plaintiffs in error) complain. They claim that their claims should be first paid. We think however that the judgment of the court below was correct. We think that it is not only supported by reason and justice, but it comes fairly within the spirit of the mechanic's-lien law itself. The defendants make their claim exclusively under § 17 of that law. (Comp. Laws, 683.) But § 17 must be read in connection with § 14; and indeed, in connection with the whole of the law upon the subject of mechanics' liens. Then, taking the whole of the law together, and it undoubtedly means that a mechanic's lien shall operate upon the whole of the estate which the person procuring the labor and materials may have in and to the property for which he procures the same, whatever may be the character of that estate, but that such lien cannot operate upon anything more than such estate, and that so far as it does operate, it is the paramount

lien upon the enhanced value given to such estate by the labor and materials. That is, it is the paramount lien upon the surplus value of the estate over and above what would have been the value of such estate without such labor and materials. In the present case Mrs. Bickerdyke had a contingent equitable estate in the property in question. The plaintiff had all the rest of the estate. Upon this contingent equitable estate of Mrs. Bickerdyke the defendants' liens operated, and upon that they were the paramount lien to the extent above mentioned; but they operated upon nothing more. They could not operate upon anything more. They could not reach something that Mrs. Bickerdyke did not have. They could not reach to the plaintiff's legal estate. A lien upon an estate cannot be greater than the estate itself. A stream cannot rise higher than its fountain. And therefore, we think that said liens did not in any manner affect the legal estate of the plaintiff, or its rights thereunder. But the plaintiff (as well as the defendants) had liens upon Mrs. Bickerdyke's equitable estate. It had a vendor's lien, (*Stevens v. Chadwick,* 10 Kas. 406,) and a mortgage lien, upon the same. But for the purposes of this case we shall consider that the defendants' liens were paramount to either of these liens of the plaintiff. Indeed, for the purposes of this case we shall consider the mechanics' liens of the defendants upon Mrs. Bickerdyke's equitable estate as paramount and stronger than any other liens could possibly be. But the plaintiff had more than the said vendor's lien and mortgage lien upon Mrs. Bickerdyke's equitable estate. It also had a lien upon the legal estate, and held such legal estate in its own hands as a security for its own claim. And these last-mentioned rights of the plaintiff are rights not derived from Mrs. Bickerdyke, or from the defendants, or from any common grantor; but they are rights originally held by the plaintiff, reserved to it by the transactions with Mrs. Bickerdyke, and with which it has never parted. And these rights are governed more by the law relating to vendor and vendee than by any law relating to liens or incumbrances. Originally

the plaintiff held the whole of the estate, both legal and equitable. It parted with the equitable estate upon certain conditions. But it reserved to itself the legal estate, with a lien upon it to secure the payment of said debt of $7,512.85. Now, how can the plaintiff be divested of this legal estate except by the payment of said debt — except by the fulfillment of the terms and conditions upon which it agreed to divest itself of said legal estate? To take the legal title to said property from the railway company without paying said debt, against the consent of the company, and for no crime or fault of the company, would look very much like confiscation. If the judgment of the court below had merely ordered Mrs. Bickerdyke's equitable estate to be sold to satisfy the defendants' claims, then possibly there would have been no necessity for making any provision for the payment of the plaintiff's claim. But the purchaser of the property in such a case would have stood precisely in the place of Mrs. Bickerdyke. He would have obtained precisely her equitable estate; nothing more, and nothing less. And before he could have obtained the legal estate he would have had to fulfill all her obligations to the plaintiff. But the court below did not stop with ordering that the equitable estate of Mrs. Bickerdyke should be sold. The court ordered that the entire estate, legal as well as equitable, should be sold. And therefore, as the sale would divest the plaintiff of its legal estate, the court had to provide by its judgment for paying the plaintiff's claim. We see no error in this. On the contrary, it was eminently just and legal. We suppose that no one will claim that the giving of said promissory notes for the debt, and the giving of said mortgage upon Mrs. Bickerdyke's equitable estate and upon the furniture in the hotel to secure the payment of said notes, will in any manner change the plaintiff's rights with regard to the legal estate, when at the same time the legal estate was reserved as a further security for the payment of said debt.

The judgment of the court below will be affirmed.

All the Justices concurring.