## PETER GETTO *et al.* v. J. FRIEND *et al.*

1. JUDGMENT, *Interest on—Statute Construed.* Section 5, chapter 51, Laws of 1889, provides: "When a rate of interest is specified in any contract, that rate shall continue until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest mentioned in the contract; . . . *but in no case shall such rate exceed 10 per cent. per annum;*" but the concluding words of this section have no application to a contract made on the 7th day of June, 1887, that bears interest at the rate of 12 per cent. per annum, and applies only to contracts made after the date when said section took effect. It was material error for the trial court to render a judgment bearing interest at only 10 per cent. per annum on a contract for 12 per cent., dated June 7, 1887.

2. MECHANICS' LIENS—*Foreclosure—Measure of Interest.* In actions to foreclose mechanics' liens for work done and for material furnished, under a contract with one who has an executory contract for the purchase of a city lot and is in possession thereof, the lien of the mechanic or material-man must be measured by the extent of the equity of the purchaser under the executory contract.

*Error from Sedgwick Court of Common Pleas.*

ACTION to foreclose mechanics' liens. The material facts are stated in the opinion. Judgment in the court below, at the May term, 1889.

*Sankey, Campbell & Amidon,* for plaintiff in error Getto.

*Moore & Douglass,* for plaintiff in error Rogers, and defendant in error Melrose.

*Dale & Wall,* for defendants in error Oliver Bros. and other mechanics' lien claimants.

Opinion by SIMPSON, C.: Four actions were commenced in the court below to foreclose so many mechanics' liens upon property known as "Lot No. 13, on Goethe avenue, in Getto's second addition to the city of Wichita." All parties holding mortgages upon the property were made defendants in these actions. These suits were consolidated, tried by the court, the order of priority of all liens was determined, and the final decree established the rights of all parties. Two of the parties bring questions affecting their rights to this court for review. The material facts are, that on the 23d day of May, 1883, Peter Getto, who was the owner of said lot No. 13, sold by contract said lot to A. H. Peavey, for the sum of $1,100. Peavey paid $50 cash, and agreed to give his note, due in one year, for the balance of the purchase-money, secured by a mortgage on the lot. It was agreed between Getto and Peavey that the latter should build a house on the lot, that Getto should permit Peavey to obtain a loan on the lot and give a first mortgage as security therefor, and that Getto's mortgage for the purchase-money should be subject to the mortgage given by Peavey to obtain the money with which to build a house. Acting on this agreement, Peavey secured a loan from one George C. Strong, to secure which he executed two mortgages to Strong, one for $1,000 and one for $150. Getto having previously executed a deed for the lot to Peavey, and delivered it to Strong, Peavey and wife executed and delivered mortgages to Strong and Getto, the mortgage to the latter reciting that it was subject to mortgages to Strong for $1,150.

The deed from Getto to Peavey and the mortgages from Peavey and wife to Strong were deposited for record on the 4th day of June, at 5:20 P.M. The mortgage from Peavy and wife to Getto was deposited for record on the same day, at 5:30 P.M. On this state of facts, omitting the details as to the mechanics' liens, the trial court found as follows:

"The court finds that the said defendant, A. H. Peavey, is indebted to the said J. Friend, plaintiff, in the sum of $106.33; to plaintiff Robert Carson, in the sum of $39.51;

to plaintiff H. C. Hawkins, $30; to plaintiff C. F. Hawley, the sum of $47.64; to Oliver Brothers, $567.30; to A. J. Hurst, $74.38; to Trimble Brothers & Threlkeld, $29.96; to Goodyear & Co., $43.42; to Peter Getto, $1,270.50; to James Melrose, $1,250; to Coleman Rogers, $187.50; that all of said sums, except the three last named, are for work, labor and materials furnished said A. H. Peavey by said named parties for the purpose and use in the erection of a certain building on the property in controversy, to wit, lot 13, on Goethe avenue, in Getto's second addition to the city of Wichita, in Sedgwick county, Kansas, and that said parties all filed their proper and verified statements of the work, labor and materials in the office of the clerk of the district court of Sedgwick county, Kansas, in the manner and within the time provided by law in relation thereto; that at the time of the commencement of said actions to foreclose said mechanics' liens, all of said parties aforesaid had valid and existing liens upon the premises described as aforesaid to the amount of their respective claims aforesaid; that the said last three named parties, at the time of the commencement of this action, had liens upon said premises aforesaid to the amount of their respective claims by virtue of mortgages thereon executed by said A. H. Peavey to themselves or their assignors.

"The court further finds that, as to the priority of said liens, the mortgage executed by said A. H. Peavey to said Peter Getto should be declared a first and prior lien on the premises in controversy, and that the liens of said J. Friend, Robert Carson, H. C. Hawkins, C. F. Hawley, Oliver Brothers, Trimble Brothers & Threlkeld, A. J. Hurst and Goodyear & Co. should be declared second liens upon said premises; that the mortgage given to George C. Strong and assigned to Melrose should be declared a third lien upon said premises, and that the mortgage given to George C. Strong and assigned to Coleman Rogers should be declared a fourth lien upon said premises; that said James Melrose should be subrogated to the rights of said Peter Getto in said first mortgage lien to the amount of $1,000, with interest thereon at the rate of 12 per cent. per annum from the 1st day of June, 1887, and that said Coleman Rogers should be subrogated to the rights of said Peter Getto in the balance of said first mortgage to the amount of $20.50, with interest thereon at the rate of 12 per cent. per annum from the 1st day of June, 1887, and the balance of said Coleman Rogers' interest in said mort-

gage should be declared to follow the liens of all said parties
who are heretofore declared to be second-lien holders on said
premises; that said Peter Getto's mortgage should be declared
a last lien upon said premises, thereby following the interest
of all the said parties claiming a lien upon said premises as
aforesaid.

"The court further finds that each of said mortgages held
by Getto, Melrose and Rogers has the words 'appraisement
waived' therein inserted, and that said parties last named are
now entitled to have said mortgages foreclosed, and the right
to enter a further judgment for the foreclosure of said mort-
gages or any of them for the sale of said property thereunder,
without appraisement, is hereby expressly reserved to said
Getto, Melrose and Rogers respectively, in case the said prop-
erty should fail to sell within six months from the date hereof
for two-thirds of the appraised value thereof under the terms
of the present judgment.

"It is therefore considered, ordered and adjudged by the
court that said plaintiff J. Friend, have and recover judg-
ment against said A. H. Peavey in the sum of $106.33, with
six per cent. from this date."

To this judgment exceptions were saved by Getto and
Rogers, and they bring the questions affecting their interests
to this court for review. Getto claims that the trial court
erred in deciding that his purchase-money mortgage was a
junior lien to the mortgages of Melrose and Rogers, and the
mechanics' liens.

I. The facts disclosed by the record in relation to the me-
chanics' liens are as follows: It is admitted in the answer of
Getto that he sold said lot No. 13 to A. H. Peavey, on or
about the 1st day of May, 1887. Hannah, under contract
with Peavey, commenced to build a stone foundation for a
large house on the 17th day of May, 1887. Peavey bought
lumber for the construction of a barn on the lot from Oliver
Bros., early in May. These facts show possession of the lot
by Peavey in pursuance of his contract of purchase from
Getto, and are sufficient of themselves to sustain the priority
of the mechanics' liens on the equity of Peavey, as they at-
tach from the time of the commencement of the building by
the express terms of the statute, and as declared in the case of

*Thomas v. Mowers*, 27 Kas. 265. Of course, the priority of these liens on the equity of Peavey cannot be successfully controverted, but how they are affected by the subsequent conveyances and mortgages is the serious question with which we have to grapple, and the case cited above does not help us in any respect. The case of *Seitz v. U. P. Rly. Co.*, 16 Kas. 133, is a somewhat instructive one. In its main features it resembles the one we are considering. In that case as in this, the contract for labor and materials was made with the owner of the equitable title. There had been only a partial payment made of the purchase-money by the holder of the equitable title. The original contract for purchase and sale of the premises was in parol. At the time labor was performed and material furnished, possession was shown under the verbal contract. A mortgage was subsequently executed to secure the balance of the purchase-money as in this case. The cases differ in this: in one a conveyance was made vesting the legal title in the debtor; in the other no conveyance of the legal title was made. On this state of facts this court say, *arguendo:*

"That the mechanics' liens operated upon the whole of the estate which the person procuring the labor and the materials may have in and to the property for which he procures the same, whatever may be the character of the estate, but that such lien cannot operate upon anything more than such estate; and, as far as it does operate, it is the paramount lien upon the enhanced value given to such estate by the labor and materials."

The law provides (§ 630, Code):

"Such liens shall be preferred to all other liens or incumbrances which may attach to or upon such land, buildings, or improvements, or either of them, subsequent to the commencement of such building."

Another case that must not be overlooked in the consideration of this one is that of *Lumber Co. v. Schweiter*, 45 Kas. 207. Some of the material facts in that case are, that Schweiter sold Jones a lot on the 29th of May, who agreed to build a house on it. When the house was inclosed, Schweiter was to convey the lot to Jones, and Jones should have the privilege

to place a mortgage thereon, which should be a first lien, and should execute a mortgage to secure the balance of the purchase-money; and until the execution, delivery and record of the deed and mortgage, Jones should keep the lot clear of all liens, taxes, and judgments. It was agreed between Schweiter and Jones that the title to the lot, both legal and equitable, should remain in Schweiter until the conveyance and mortgages were made. On the 2d of May Jones contracted with the Chicago Lumber Company for the lumber and material with which to build a house on the lot, and a delivery of the material was begun on that day, and completed on the 27th of June. On the 20th of May Schweiter executed and delivered a deed to Jones of the lot, and at the same time Jones and wife executed mortgages for money borrowed and for the balance of the purchase-money of the lot. All these instruments were recorded on the 23d of May. On September 9th the lumber company filed its statement, claiming a lien for the lumber and materials used in the construction of the house, and at the trial the district court found that the mortgage securing the borrowed money was the first lien, Schweiter's mortgage the second, and the lumber company's the third. The lumber company brought the case to this court, but the judgment below was affirmed, great stress being laid in the opinion on the fact that Schweiter retained both the legal and equitable title to the lot until the deed and mortgages were executed.

While there was no express stipulation between Getto and Peavey in this case to that effect, the agreement was that Peavey should execute a mortgage to secure the building fund, which by the consent of Getto should be a first and superior lien to that of Getto for the balance of his purchase-money. By all the ordinary rules of law, those furnishing material to and doing work for Peavey were bound to ascertain the nature and extent of his equity in the lot. To the extent of that equity, whatever it may be, the materials furnished and the work performed are a lien dating from the commencement of the building and prior to all subsequent liens or incum-

brances, but, in the language of Mr. Justice VALENTINE, in the case of *Seitz v. U. P. Rly. Co.*, 16 Kas. 133, "A lien upon an estate cannot be greater than the estate itself. A stream cannot rise higher than its fountain." It seems, therefore, that the operation of the mechanics' liens must be limited to the equity of Peavey in the lot, and that the trial court erred in determining the priority of liens; the true order being, so far as the legal estate is concerned: First, the mortgage to Melrose, second, the mortgage to Rogers; third, the mortgage to Getto; fourth, the mechanics' liens; and upon the equitable estate of Peavey: First, the mechanics' liens, and the mortgages following them in the order above stated.

II. Another error complained of by both Getto and Rogers is, that the trial court rendered judgments in their favor to bear interest at the rate of 10 per cent. per annum only, when the notes upon which the judgments are founded bear interest at the rate of 12 per cent. per annum. These notes were secured by mortgages and bear date on the 1st of June, 1887, payable in two and one-half years after date. The law in force at the time of the execution of these notes was § 6, chapter 51, Comp. Laws of 1885, and it provided:

"When a rate of interest is specified in any contract, that rate shall continue until full payment is made; and any judgment rendered on any such contract shall bear the same rate of interest mentioned in the contract, which rate shall be specified in the judgment; but in no case shall such rate exceed 12 per cent. per annum."

Intermediate the date of the note and the trial of this case, the legislature changed the section of the law above quoted so as to make the concluding words read, "But in no case shall such rate exceed 10 per cent. per annum." (Laws of 1889, ch. 164, § 5.) The trial court provided in its decree that the judgments rendered on the notes of date June 1, 1887, should bear interest at the rate of 10 per cent. per annum. The contention of counsel for plaintiffs in error is, that the amendment of § 6 by the legislature of 1889 only operates on contracts made after the amendment became the law, and could not im-

pair the obligation of contracts made before that date. This contention is abundantly sustained by repeated decisions of the supreme court of the United States, and our plain duty is to follow these adjudications. These decisions are constructions of a provision of the constitution of the United States that declares that "No state shall pass any law impairing the obligation of contracts." The pith of all these decisions is clearly expressed by a quotation from the case of *Edwards v. Kearzey*, 96 U.S. 595. Mr. Justice Swayne, speaking for the court, said:

"The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is therefore void."

This was said in respect to a provision of the constitution of the state of North Carolina, that exempted personal property of a debtor to the value of $500 from sale under execution or other final process issued for the collection of any debt; the court holding that the exemption was not valid as regards contracts made before the adoption of the constitution of that state. This rule applies to all state legislation that affects the validity, construction, discharge and enforcement of contracts made before such legislation took effect. (*Von Hoffman v. City of Quincy*, 4 Wall. 535.)

"One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the constitution to be impaired at all. This is not a question of degree, manner, or cause, but of encroaching in any respect on its obligation dispensing with any part of its force." (*Planters' Bank v. Sharp*, 6 How. 301.)

Returning to the facts in this case, it cannot be seriously doubted but that the reduction of the interest on the notes by the decree of the trial court was a material impairment of the obligations of the contracts. If it is once conceded that the legislature of the state, and the courts of the state by virtue of such legislation, can reduce the rate of interest specified in

the contract, then there is no limit to such power. In this case 2 per cent. per annum was taken from the rate agreed upon. If this can be done, there is then no legal objection to a reduction of 10 per cent. per annum. If the obligation to pay interest can be impaired, why cannot the obligation to pay a part of the principal be also impaired? The legislature of the state reduced the maximum rate of interest that could be recovered on any contract from 12 to 10 per cent. by this amendment, but we do not suppose that it was within the legislative intent to affect contracts made before the passage of the amended law. It follows that, on all contracts made prior to the amendment of 1889, the old law governs, and to those made after that date, the new law applies. The trial court erred in fixing the rate of interest that the judgment should bear from the time of its rendition at 10 per cent. The judgment creditor is entitled to the rate specified in the contract. There was also error in adjusting the liens, and for these errors we recommend that the judgment be reversed, and the cause remanded to the trial court to render a judgment as indicated in this opinion.

By the Court: It is so ordered.

All the Justices concurring.