No. 40,912

WALDON L. NORRIS, CLAUDE V. NORRIS and EVERETT L. NORRIS, Partners, doing business as Norris Bros., *Appellees,* v. OTTO W. NITSCH and GLADYS NITSCH, *Appellants,* ROBERT L. NITSCH and MABEL L. NITSCH, *Appellees,* RAY A. CLARK, *Appellee* and *Cross-Appellant,* and LOGAN-MOORE LUMBER COMPANY, a Corporation, *Appellant.*

(325 P. 2d 326)

Opinion filed May 10, 1958.

*John J. Riling,* of Lawrence, argued the cause, and *Eugene C. Riling,* of Lawrence, was with him on the briefs for the appellants, Otto W. Nitsch, Gladys Nitsch and Logan-Moore Lumber Company.

*Forrest A. Jackson,* of Lawrence, argued the cause and was on the briefs for the appellee and cross appellant, Ray A. Clark.

*Robert B. Oyler,* of Lawrence, argued the cause and was on the briefs for the appellees, Norris Bros.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in an action to foreclose a mechanic's lien filed in the district court of Douglas County, Kansas. A general contractor, Otto W. Nitsch, joined as a defendant, built a house on a one-acre tract of land and in his answer requested specific performance of an oral agreement or promise for the conveyance of this tract. The plumbers, plaintiffs, and the lumbermen, defendants, as lien claimants, also sought to enforce this alleged oral agreement and to foreclose their respective liens. The aggrieved parties duly perfected their appeals from all adverse rulings of the lower court after trial and judgment.

The plaintiffs, Waldon L. Norris, Claude V. Norris and Everett L. Norris, doing business as Norris Bros., appellees herein, are a partnership engaged in the plumbing, wiring, heating and air-conditioning business, and will hereinafter be referred to as the plumbers. The defendant, Logan-Moore Lumber Company, appellant herein, a Missouri corporation authorized to do business in Kansas, is engaged in the lumber business and will hereinafter be referred to as Lumber Co. The defendant, Dr. Ray A. Clark, appellee and cross appellant herein, is the owner of the legal title to the land involved in this action, and will hereinafter be referred to as vendor or Clark. The defendants, Robert L. Nitsch and Mabel L. Nitsch, husband and wife, appellees herein, contracted to purchase the land involved in this case from Clark, and will hereinafter be referred to as vendees or Robert, omitting reference to the wife. The defendants, Otto W. Nitsch and Gladys Nitsch, husband and wife, appellants herein, are the father and stepmother of the defendant, Robert L. Nitsch, and received a warranty deed from Robert for one acre of the land purchased by Robert from Clark under contract, and they will hereinafter be referred to as assignees, or Otto, omitting reference to the wife.

The case was tried to the district court of Douglas County upon appropriate pleadings in which the issues were joined. The evidence at the trial was conflicting and the trial court made findings of fact and conclusions which it set forth in a memorandum opinion.

The findings of fact, insofar as the same are material to the issues herein, may be summarized as follows:

On or about January 26, 1955, Clark purchased the SW¼ of 2-13S-19E in Douglas County, Kansas. On February 1, 1955, Clark contracted in writing with Robert to sell him a tract of approximately seven acres in the southwest corner of the quarter above described for $8,000, said tract being 700 by 450 feet, the length thereof running north and south. This land will hereinafter be referred to as Tract No. 1. Shortly thereafter Clark decided that he wanted the west 232 feet of the southwest corner of said Tract No. 1 returned to him. He communicated this to Robert whereupon it was orally agreed between them sometime in June, 1955, that the seven-acre tract would be shifted 232 feet to the east and the price reduced from $8,000 to $7,000, so that thereafter the tract Robert was purchasing from Clark was a tract 700 feet north and south by 450 feet east and west, the southwest corner of which was 232 feet east of the southwest corner of Tract No. 1. The tract Robert orally agreed to purchase in June, 1955, will hereinafter be referred to as Tract No. 2.

Near the southeast corner of Tract No. 2 was a barn which Robert tore down, leaving a foundation. Otto assisted Robert in the construction of Robert's home which was built on a portion of the seven-acre tract. By reason of Robert's indebtedness to Otto it was orally agreed between them, among other things, that Otto could use the barn foundation above mentioned upon which to construct a house.

On or about June 24, 1955, the Lumber Co. began supplying lumber and other building materials to Otto on an open account, it being understood that Otto was going to use such materials in the construction of a home on the site above mentioned. At the time the Lumber Co. began supplying such materials, Otto told the manager of the Lumber Co. that he would get a loan to pay for the same when the house was completed, at which time Robert would convey the land on which the house was built to Otto. The last materials were supplied by the Lumber Co. on September 7, 1955, and on November 9, 1955, its lien statement was filed in the office of the clerk of the district court of Douglas County. The amount claimed in said lien was the sum of $1,899.31 with interest at 6% from September 7, 1955. The lien for said amount was claimed on

Tract No. 2. The Lumber Co. had made no previous effort to contact Clark and had made no investigation as to the interest Otto had in the land in question other than to hear the representations made in that connection by Otto at the time the Lumber Co. began supplying building materials. After the Lumber Co.'s lien was filed, its manager contacted Clark and the only response Clark gave was that he "wanted to rid the woods of the Nitsches."

On or about July 27, 1955, Otto and the plumbers entered into an oral agreement·by the terms of which the plumbers were to supply and install certain plumbing, electrical, heating and kitchen equipment and to furnish the labor necessary in connection therewith for an agreed price. At the time of this agreement, the plumbers inquired only as to whether or not Otto would be able to pay for the labor and materials covered by the contract, and upon being assured by Otto in the affirmative, the plumbers proceeded, beginning July 28, 1955, with the plumbing and wiring which had to be done before the fixtures and equipment could be installed and connected. After such preliminary work was completed and prior to the installation of any fixtures and equipment, Claude V. Norris, one of the plumbers, called Clark on the telephone, asked him whether or not he intended to release the land on which the house was being built to Otto, and whether or not Otto would have adequate financing to pay the plumbers' bill when the house was completed. Clark assured Claude V. Norris that he intended to release the land to Otto and to arrange financing for him when the building was completed. With this assurance from Clark, the plumbers completed their contract. On January 17, 1956, the plumbers filed their lien statement claiming $1,047.60 as a lien on Tract No. 2.

On October 5, 1955, Otto went to an attorney, Wm. L. Lemesany, who at Otto's request wrote a letter to Clark explaining that Robert had agreed to sell Otto some land on which to build a house, that Otto's materialmen were pressing for payment, that with Clark's "mortgage" on the land Robert could not give Otto a clear title, and without such title Otto could not secure a loan on the property and inquired whether or not Clark would release his "mortgage" in exchange for an agreed sum of money which Otto would be able to pay after he secured a loan on the property. Prior to and after

the date of this letter Otto had sought Clark's release of the land on which he had built his house, but to no avail.

On October 7, 1955, Clark and Robert entered into a written contract by the terms of which Clark agreed to sell and Robert agreed to purchase Tract No. 2 for $12,000. This contract in substance reduced to writing the oral arrangement agreed upon in June, 1955, except that among other things, the consideration was increased from $7,000 to $12,000 to include a $5,000 loan made by Clark to Robert on July 28, 1955, by check. The balance owed on this contract by Robert on the date of trial was $11,000, payable $75 per month with interest at 6% per annum on the unpaid balance.

Before Otto began construction of his house he talked with Clark about helping Clark develop his acreage. Otto was a building contractor in Norton, where he allegedly had constructed some 13 houses. At this time Otto was talking in terms of building a small moveable shack in which he could live while engaged in his building operations. At one time this shack was going to be built back of the present site of Clark's home on the west 232 feet of Tract No. 1. Later the shack was to be built back of the site of Robert's home, and finally Robert permitted what is now the house in controversy to be built on the old barn foundation previously mentioned. During much of the time between the start of construction on Clark's home in the early summer of 1955, and January, 1956, Otto worked off and on for Clark, at one time early in this period having borrowed $300 which Clark permitted him to work out.

The trial court specifically found:

". . . Vendor knew assignees were building on the barn foundation and objected several times to assignees building there but made no real effort to stop them believing, as he said, that they were building a house to move. As a matter of fact at one time vendor told Otto that *if everything worked out all right* he, vendor, would release the land to assignees, but at no time did vendor and assignees arrive at any definite agreement, written or oral, by the terms of which vendor bound himself to release the land in question to assignees."

The house built by Otto did not contain the square footage required by the contract dated October 7, 1955, which Clark had with Robert. An attorney, Robert B. Oyler, went to Clark's office in this connection and secured from Clark a statement dated December 7, 1955, which reads:

"This is to certify that I will sign an amendment to the contract for Robert L. Nitsch allowing him two years to enlarge one building on the land to meet restrictions provided all construction costs are cleared."

Clark testified that the building referred to in the above statement was the house on Tract No. 3, hereafter described.

On February 15, 1956, Robert gave Otto a warranty deed to a tract 436.6 feet north and south by 100 feet east and west, the southwest corner thereof being 582 feet east of the southwest corner of Tract No. 1. This tract, comprising exactly one acre, is the land upon which Otto constructed his home on the barn foundation and will hereinafter be referred to as Tract No. 3. At the time this deed was given, Otto knew Robert was purchasing Tract No. 3 and the other land in Tract No. 2 from Clark and that Otto's title was subject to Clark's interest.

On August 13, 1956, the plumbers filed this action to foreclose their lien on Tract No. 2, joining as defendants in their petition all parties heretofore mentioned. The Lumber Co., thereafter, in addition to answering, filed a cross-petition to foreclose its lien on Tract No. 2. Clark, Robert and Otto have answered the pleadings of the plumbers and the Lumber Co.

At the trial Clark's demurrer, both to the evidence of the plumbers and the Lumber Co., was sustained insofar as it pertained to the attachment of a lien upon land other than that contained in Tract No. 3, and overruled insofar as it pertained to Tract No. 3.

The trial court on the 25th day of March, 1957, announced its decision. It found that the plumbers and the Lumber Co. were, respectively, entitled to judgment against Otto for the total amounts claimed in their pleadings; that the mechanics' liens filed by the plumbers and the Lumber Co. (as amended by the court) should be foreclosed; that the plumbers' lien attached to Tract No. 3 and was prior to the interest of Otto and Clark therein; that Clark had an interest in Tract No. 3 valued at $7,000; that the Lumber Co.'s lien attached to Tract No. 3 and was prior to the interest of Otto, but was subject to and did not attach to the interest of Clark; and that Robert had no interest in Tract No. 3 except the obligation of paying Clark for it.

The journal entry decreed in accordance with the foregoing findings and ordered the property sold.

Otto and the Lumber Co. appeal to this court asserting as their principal contention error of the trial court in not rendering a judgment for the specific performance of an oral contract between

Clark and Otto. This contention may be answered briefly by stating that the trial court upon conflicting evidence presented at the trial found that no oral agreement existed between Clark and Otto.

The trial court in its order ruling the motions for a new trial stated:

"In their argument, counsel for Lbr. Co. and for assignees interpreted the Court's findings as entitling assignees to a conveyance of Tract No. 3 from vendor and requested that the Court decree specific performance accordingly. This being done, vendor would be out of the picture with his vendor's lien on Tract No. 3 and Lbr. Co.'s lien would be on a par with the lien of plaintiff.

"The difficulty with this argument is that the Court's findings were, that at no time, either orally or in writing, did vendor bind himself to release or convey his interest in Tract No. 3 to assignees. Likewise, the findings were, that at no time did vendor subject his interest in said Tract to the lien of Lbr. Co. Since there was no contract binding vendor to release or convey to assignees, there is nothing upon which equity can predicate specific performance."

Clark appealed from the judgment entered March 25, 1957, awarding the plumbers a prior lien; from the order overruling his motion for a new trial; and from all other adverse rulings.

The contention of Clark is that the house built by Otto is personal property and no mechanic's lien can attach. (*Lumber Co. v. Larmor*, 110 Kan. 670, 205 Pac. 621; and *State, ex rel., v. Ancient Order of United Workmen*, 178 Kan. 69, 283 P. 2d 461.) This contention will be considered later. Clark also contends that the lien statements of both lien claimants are void because the name of one of the owners is not mentioned in either of the lien statements. (Citing, *McHenry v. McHenry*, 150 Kan. 498, 95 P. 2d 261; *Lang v. Adams*, 71 Kan. 309, 80 Pac. 593; *Blattner v. Wadleigh*, 48 Kan. 290, 29 Pac. 165; and *Glass Co. v. Mill Co.*, 1 Kan. App. 614, 42 Pac. 387.) For this reason it is asserted the demurrer to the evidence of the lien claimants should have been sustained. Clark calls attention to the fact that both claimants in their respective pleadings allege that the land against which they claim a lien is owned by Otto W. Nitsch and Gladys Nitsch; that they attach to their pleadings a copy of a deed from Robert L. Nitsch and Mabel L. Nitsch, his wife, conveying the one-acre tract to Otto W. Nitsch and Gladys Nitsch; and that the lien statements omit the name of Gladys Nitsch.

The appellees (plumbers) counter by calling the court's attention to the fact that Clark did not at any time raise this issue in the lower court. Upon examination of the record presented to this

court, it does not affirmatively appear that the question was presented to or determined by the trial court. This court has repeatedly held that where it does not affirmatively appear that a question raised on appeal was presented to and determined by the trial court, this court does not consider it on review. (*Hoppe v. Hoppe,* 181 Kan. 428, 312 P. 2d 215; *Holton v. Holton,* 172 Kan. 681, 243 P. 2d 222; West's Kansas Digest, Appeal and Error, § 169; and Hatcher's Kansas Digest, Appeal and Error, § 304.)

While the facts in the instant case are voluminous and somewhat complicated, the issues are relatively simple.

The principal question presented is whether Otto owned such an interest in Tract No. 3 that it could be subjected to a mechanic's lien.

The deed from Robert to Otto on February 15, 1956, confirmed in all respects the previous oral contract whereby Otto was placed in the possession of Tract No. 3 prior to the construction of the house in question. The legal effect of the agreement between Otto and Robert was the assignment to Otto of all the right, title and interest of Robert in and to Tract No. 3. There is no question but that Robert had an equitable interest in this real estate under his contract with Clark. Otto was put in possession by Robert, was in possession when the contracts with the lien claimants were made, as well as during the period of the construction of the house in question. He became and now is the equitable owner of Tract No. 3, subject to the interest of Clark who owns the legal title. Under the provisions of G. S. 1949, 60-1401, the owner of an equitable interest in real estate is such an owner as may subject his interest to a mechanic's lien. (*Getto v. Friend,* 46 Kan. 24, 26 Pac. 473; *Lumber Co. v. Fretz,* 51 Kan. 134, 32 Pac. 908; *Bond v. Westine,* 128 Kan. 370, 278 Pac. 12; see, also, annotation in 2 A. L. R. 794 supplemented in 95 A. L. R. 1095.)

This court has held that a person in possession of real estate under a verbal agreement to convey the fee simple title to him is an owner thereof within the meaning of our statute relating to a mechanic's lien, and may subject his interest therein to such a lien. (*Bond v. Westine,* supra; and *Drug Co. v. Brown,* 46 Kan. 543, 26 Pac. 1019.)

Did contracts which Otto had for labor and materials with the lien claimants subject the interest of Clark in Tract No. 2 to the liens of the plumbers and the Lumber Co.?

For a lien to attach under the statute it is not necessary that the contract for labor and materials be made with the one who owns the fee title. Ordinarily the right to a lien upon real property is limited to the interest of the person for whom or at whose instance the labor was performed or the materials furnished. (*Huff v. Jolly,* 41 Kan. 537, 21 Pac. 646; *Getto v. Friend,* supra; 36 Am. Jur., Mechanics' Liens, § 84, p. 68; and see, also, note in 102 A. L. R. 234.) Reference is made to *Seitz v. U. P. Railway Co.,* 16 Kan. 133, where the facts and legal questions presented were closely analogous to the instant case.

The following is stated in 58 A. L. R. 912:

"Under statutes confining mechanics' liens to claims for labor or materials furnished for improvements made under contract with the owner, or proprietor, it may be stated generally that a contract for labor and materials, made by a vendee, will not subject the legal owner's interest to a lien, even if the latter has knowledge that the labor and material are being furnished . . ."

By reason of the foregoing principles of law *the contracts* Otto had with the plumbers and the Lumber Co., which resulted in the filing of mechanics' liens on Tract No. 2 for labor and materials, did not subject the legal estate or affect the rights of Clark holding the legal title to Tract No. 2, but subjected only the equitable estate of Otto in Tract No. 3 to the liens. The demurrer of Clark to the evidence of the lien claimants was properly sustained insofar as it pertained to the attachment of liens upon real estate other than that contained in Tract No. 3.

Did Clark himself do anything which subjected his interest in Tract No. 3 to the mechanic's lien of either the plumbers or the Lumber Co.?

Where improvements are contracted for and made with what is deemed to be the consent and authority of the vendor of real estate, a lien arises on the latter's interest, as well as on that of the purchaser. (*White v. Kincade,* 95 Kan. 466, 148 Pac. 607; and see, 58 A. L. R. 949.) If, however, a vendor does no affirmative act to induce the materialmen to advance the credit upon which the lien is claimed, a vendor retaining title under a contract of sale is not estopped to assert his title as against one claiming a lien for materials furnished the purchaser. (*Fine v. Dyke Bros.,* 175 Ark. 672, 300 S. W. 375, 58 A. L. R. 907.) Those who furnish labor and materials to the purchaser of real estate are bound under the ordinary rules of law to ascertain the nature and extent of the purchaser's equity in the real estate. (*Getto v. Friend,* supra.)

Upon the foregoing rules of law it is clear from the facts that the Lumber Co.'s lien did not attach to the interest of Clark. On the other hand, although the plumbers made no inquiry of Clark at the time they began supplying labor and materials to Otto, they did before the fixtures and equipment were delivered and connected, have Clark's assurance that he intended to release Tract No. 3 to Otto and help him finance the building when the house was completed. This was an affirmative assurance by Clark which induced the plumbers to advance further credit to Otto for materials and labor in the construction of the house on Tract No. 3 upon which the lien is claimed. Under these facts and circumstances it would be inequitable to hold that Clark did not subject his interest in Tract No. 3 to the plumbers' lien. We therefore hold that such assurance on the part of Clark subjected his interest in Tract No. 3 to the lien of the plumbers.

The foregoing statements of the law and conclusions are substantially those stated by the trial court in its memorandum opinion dated March 25, 1957, pursuant to which it entered judgment.

The trial court found the extent of Clark's interest in Tract No. 3 to be $7,000. Various arguments are advanced challenging this finding. Clark contends that it should be $11,000, the balance due on the contract he has with Robert, while Otto and the Lumber Co. think it should be considerably less. It must be remembered that Tract No. 3 is a component part and superimposed upon Tract No. 2 upon which Clark has a contract with Robert. By oral agreement the original written contract was subsequently modified in June, 1955, to cover Tract No. 2, when the purchase price was changed from $8,000 to $7,000. The $5,000 which Clark loaned Robert on July 28, 1955, by check was to pay for materials and labor in the construction of Robert's house on Tract No. 2. The trial court found that a vendor's lien of $7,000 existed before the Lumber Co. supplied any materials for the building here in question. The Lumber Co. began supplying lumber on June 24, 1955. G. S. 1949, 60-1401, gives the lien of a mechanic preference over all liens or encumbrances which may attach subsequent to the commencement of the building. It follows that the additional amount over $7,000 written into the contract of October 7, 1955, between Clark and Robert was subsequent to the lien of the Lumber Co. In cases where the matter is governed by statute the law is followed and

equity cannot be invoked. (*Beeson v. Lotz,* 101 Kan. 399, 166 Pac. 466; and *Pownall v. Connell,* 155 Kan. 128, 122 P. 2d 730.)

Other questions raised by the parties to this appeal, in effect, ask this court to determine the credibility of the witnesses, weigh the evidence and assume the position of the trier of the facts. This is not the function of appellate review. A trial court's findings of fact will not be disturbed where there is competent and substantial evidence to support them. (*McHenry v. McHenry,* 150 Kan. 498, 95 P. 2d 261; and cases therein cited.) While there is conflicting testimony as to some matters covered in the findings of fact, we find from a careful examination of the record that there was ample evidence to support the findings heretofore recited.

Upon all of the facts and circumstances herein presented, we conclude that the trial court was correct in its application of the law to the facts.

The judgment of the lower court is affirmed.