No. 35,884

EWALD SCHROEDER, *Appellee* and *Cross-appellant*, v. LUDVIG NELSON, *Appellant.*

(139 P. 2d 868)

Opinion filed July 10, 1943.

*Howard T. Fleeson,* of Wichita, argued the cause, and *C. H. Brooks, Homer V. Gooing, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, were on the briefs for the appellant.

*Roy C. Davis,* of Hutchinson, argued the cause, and *Warren H. White, Frank S. Hodge, Wm. H. Vernon, Jr., Eugene A. White,* all of Hutchinson, *J. Rodney Stone* and *Bernard Peterson,* both of Newton, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant appeals from a judgment rendered against him in an action for damages sustained by plaintiff by reason of his having been struck by defendant's automobile.

As the facts will be more fully stated later, we notice the pleadings very briefly. The petition alleged that plaintiff was operating some equipment on the highway; that he stopped, descended on the left side and walked toward the rear, and that defendant negligently ran into him. The negligence alleged included defendant's speed as neither reasonable nor prudent under the conditions existing; failure to keep a proper lookout for others using the highway; failure of defendant to pull to the right when he had ample room to do so; and failure to decrease his speed as much as necessary to avoid colliding with plaintiff. Defendant's answer included an admission an accident occurred; alleged the accident was the result of plaintiff's negligence; alleged a sudden emergency which prevented defendant from avoiding the accident and charged plaintiff with contributory negligence.

As the result of a trial the jury rendered a verdict in favor of plaintiff and answered special questions which will be later set forth. Under the circumstances we shall review the testimony which tends to support that verdict or is necessary to a discussion of contentions made by the defendant.

On August 1, 1941, about 9 o'clock a. m. plaintiff was proceeding westwardly along highway 96 in Lane county, Kansas. He was driving a piece of equipment called a caterpillar Diesel patrol and drawing behind another piece of equipment called a scoop. The patrol was about nine feet wide and the scoop was about eleven feet wide. The length of the two vehicles was about forty-nine feet, and it was about thirty-five feet from the driver's seat on the patrol to the rear wheels of the scoop. The platform of the patrol, and on which was the driver's seat, was about four feet above the ground and at each side were steps leading to the ground. Loaded on the scoop was a wooden tool shed of sufficient size to cut off the driver's view to the rear. Following behind plaintiff's patrol and scoop were other similar outfits. The traveling speed was from six to eight miles per hour. Plaintiff thought it necessary to check up on his equipment and to do so he pulled to the side of the highway. The highway was about twenty feet wide and covered with asphalt, the center line not being marked. Outside the pavement were shoulders three or four feet wide covered with grass and there was a shallow ditch outside each shoulder. Plaintiff went as far off to his right as he thought he could without tipping off the tool shed or getting in the ditch. As he was preparing to stop he could see defendant's car approaching about one-half mile west. After he had stopped the patrol he arose from his seat and defendant's car was then five or six hundred feet to the west. He stepped to the south end of the patrol platform, down to the pavement and started to the rear of his equipment. He had gone about thirty-five feet or about to the rear end of the scoop when he was struck by defendant's car. In passing from the patrol toward the rear of the scoop he stayed close to his equipment but angled off to the south a little. On more than one occasion. he testified that with reference to the center of the pavement he was north of the center line or maybe just on the line. He also testified that the north wheels of the scoop were not in the ditch but were one or two feet off the pavement. There was testimony that defendant's car was being driven about fifty miles an hour. There was also testimony that defendant's car had left some

skid marks, the mark nearest the center of the pavement being seven feet, ten inches from the south edge. The skid marks angled to the south as they extended eastward, and were 137 feet long. There was a space of about fifteen feet between the rear of the equipment being driven by plaintiff and the front of that driven by the driver of the outfit following. Plaintiff was struck by the left front side of defendant's car and his body was carried and thrown off, landing near the rear of the second scoop. There was a blood spot on the pavement where plaintiff landed. This spot was near the center of the highway and about twenty-four feet east of where the skid marks ended. Dedendant's demurrer to plaintiff's evidence was overruled.

In an explanatory way, it may be said that defendant stated he did not see the equipment until he was about four hundred feet east of it; that as he approached, plaintiff arose from his driver's seat, went to the south side of his machine and jumped directly onto the fender of defendant's car; that his feet never touched the ground; that when defendant saw plaintiff jump he immediately applied his brakes. Defendant further testified that the plaintiff's equipment was just stopping when he saw it four hundred feet away; that it stopped when he was about two hundred feet away; that he had been driving between forty-five and fifty miles per hour and was still coming at that rate when the plaintiff stopped.

Under instructions, of which no complaint is made, the jury returned its general verdict and answered special questions submitted. On motion of counsel the jury was directed to make certain answers more definite. The several answers are shown. All questions and answers were as follows:

"Q. 1. Do you find that the happening was an unavoidable accident as defined in the Court's instruction? 1st A. It could have avoided. 2d A. No.

"Q. 2. Do you find that the defendant was guilty of any negligence which caused or contributed to cause the injuries received by plaintiff? A. Yes.

"Q. 3. If you answer the above question in the affirmative, state what the negligence of the defendant was. A. Driving with too great speed and failing to slow down when object appears.

"Q. 4. Do you find that the plaintiff was guilty of any contributory negligence, as defined in the Court's instructions? A. No.

"Q. 5. If the plaintiff had gotten off of his patrol on the north side instead of the south side would the happening have occurred? A. No.

"Q. 6. Should the plaintiff in the exercise of due care gotten off of the patrol on the north side? A. Yes.

"Q. 7. Did the plaintiff maintain a proper lookout for his own safety? A. Yes.

"Q. 8. Where did the accident occur with reference to the center line of the highway? 1st A. 1 foot north, 2 feet south of imaginary center line. 2d A. Between 1 foot north, 2 feet south of imaginary center line. 3d A. In space between 1 foot north and 2 feet south of imaginary center line."

In due time plaintiff filed his motion for a new trial, limited to the issue of his damages. Defendant filed his motion that the answers to questions 2 and 4 be set aside; for judgment on the ground no cause of action had been pleaded or proved; and his motion for judgment *non obstante veredicto.* The trial court denied all of these motions and rendered judgment on the verdict of the jury in favor of plaintiff and for $1,536.10 and interest. Defendant has appealed from that judgment and rulings adverse to him, and plaintiff has appealed from the decision denying him a new trial on the question of damages.

In the briefs the parties direct our attention to many cases in this state, and some from other jurisdictions, dealing with negligence and questions connected therewith. These cases have been examined, but a due regard for limits of space precludes reference to many of them.

The appellant first contends that by its answers to special questions 5 and 6 the jury found the plaintiff was guilty of contributory negligence. To avoid the effect of the answer to question 4, which absolved the plaintiff of such negligence, appellant directs our attention to the rule stated in *Eldredge v. Sargent,* 150 Kan. 824, 832, 96 P. 2d 870, and cases cited therein, that a finding similar to that made by the answer to question 4 is a general one and must yield to the detailed findings made by answers to other questions. The general rule may be conceded. Reference to question 4 will show that it is specific to this extent, it asks whether plaintiff was guilty of contributory negligence, as defined in the court's instructions. A part of the instruuction read as follows:

"The test by which the 'contributory negligence' of a person injured in an automobile accident is measured, is whether he acted as a reasonably prudent man would have acted under the peculiar circumstances of the case, considering the surrounding hazards and any other factors explanatory of the particular situation."

The finding made by the answer may not be summarily passed off as being a general finding which must yield to other findings. However, we need not rest the matter there.

Coupled with the foregoing contention is the further one that the jury found that the plaintiff had a choice of means of leaving

his patrol, one to the north and toward the ditch, which was free from hazard, the other toward the south, or on the highway side, where there was danger, and he was negligent because he did not choose the first. In support of the latter proposition appellant relies on *Jones v. A. T. & S. F. Rly. Co.*, 148 Kan. 686, 85 P. 2d 15. The same contentions were made to the trial court on the hearings of defendant's motions for judgment on the ground no cause of action had been proved and for judgment *non obstante veredicto*. In a memorandum opinion that court stated that neither question 5 nor 6 should have been submitted as the law did not require that the plaintiff, in the exercise of due care, get off on the north side, when the driver of every vehicle exercising ordinary care practically always gets off on the driver's side. Without giving full approval of the reason assigned, we agree that question 5 should not have been submitted. As to it there was and could have been no issue, it was always clear that had plaintiff stayed on his machine, left it to the north, or proceeded back staying on the equipment, he would not have been struck at the place nor in the manner that he was. As to the answer to question 6, we think it just as much a conclusion as the answer to question 4, and it certainly may not be said to be a detailed finding. The form of question 6 invited an ambiguous answer. An answer of "no" would have been objectionable on the ground there was no dispute of fact leading to that answer. An answer of "yes" would mean it would have been the exercise of due care to have left the patrol on the north side, but it certainly is no finding that in the exercise of due care the driver could not have left by the south side. And this is evident when taken into consideration with question 7, where the jury was interrogated as to whether plaintiff looked out for his own safety, and answered that he did. Without further discussion we think that the answer to question 6 does not convict the plaintiff of contributory negligence, nor is it so inconsistent with the answer to question 7, as supplemented by the answer to question 4, that appellant is entitled to judgment. Because of the situation as presented in this appeal, we note, but need not discuss at length, the general proposition that if answers to special questions were so inconsistent they could not be reconciled with each other and with the general vardict, then a new trial should be granted. Here neither party wanted a new trial.

The question remains whether plaintiff is to be denied recovery because he did not choose to leave the patrol on the north side,

rather than the south. In the Jones case, *supra*, plaintiff, a grain inspector employed by another than the defendant, while in pursuit of his work was injured in getting from one side to the other of a string of cars by climbing over the couplers of freight cars, a recognized dangerous practice, when he could safely have performed his task by going up one side of the train and passing around the end and then going down the other side. The factual situation, as well as the rules of the railroad prohibiting its own employees to follow such a practice, were all in evidence. We think the rule of that case is not controlling here. The duty incumbent upon the actor must depend on the facts surrounding the action. Plaintiff's version of what happened, and in view of the jury's verdict and answers the version we must recognize, was that when he stopped his patrol and descended from it to the south, defendant in his car was five or six hundred feet away. We think under such circumstances it may not be said as a matter of law, that plaintiff was negligent in descending from his patrol on the south side. It was a fair question for the jury which said as a matter of fact he was not.

Under another heading appellant contends that the answers to the special questions acquitted him of negligence. After directing attention to answers to questions 2 and 3, to the effect that defendant was negligent in that he drove with too great speed and failed to slow down when he saw plaintiff's equipment, and to the answer to question 8 showing where the accident occurred, appellant calls attention to the rule that such a finding exonerated him of all other acts of negligence charged (*Haley v. Kansas City Public Ser. Co.*, 154 Kan. 477, 119 P. 2d 449, and cases cited) and argues that neither the speed nor the failing to slow down constituted negligence. The rule is correctly stated, although there are exceptions to it not here pertinent. (*Harshaw v. Kansas City Public Ser. Co.*, 154 Kan. 481, 484, 119 P. 2d 459; *Dick's Transfer Co. v. Miller*, 154 Kan. 574, 577, 119 P. 2d 454.) The answers made, however, cover the allegations of the petition that defendant drove his car at a speed greater than reasonable and proper under the conditions then existing, and failed to decrease his speed as much as necessary to avoid colliding with the plaintiff, and it is implicit in the answers that the jury likewise considered the defendant failed to keep a lookout for others using the highway, or in driving further to the right to avoid the collision, or in failing to sooner apply his brakes. Appellant further contends that by the answer to question 8 the

jury refused to find defendant was on the wrong side of the highway.

We take these up in inverse order. We think appellant applies a wrong rule of interpretation to the answer to question 8. The rule is that a general verdict imports a finding upon all issues of the case not inconsistent with the special findings; that nothing will be presumed in favor of the special findings which are to be given such a construction, if possible, as will bring them into harmony with the general verdict, and that while nothing will be presumed in favor of special findings as against the general verdict, they may be viewed and interpreted in the light of the testimony. See *Marley v. Wichita Transportation Corp.*, 150 Kan. 818, 821, 96 P. 2d 877, and cases cited. The evidence showed a pavement twenty feet wide; that the widest part of the scoop was eleven feet; that it was parked partly off the pavement; that the center line of the pavement was not marked; that plaintiff was close to the widest part of the scoop when he was struck. The most favorable view to the appellant of the above answer is that the accident occurred about in the center of the highway—it cannot be construed as being an answer that plaintiff was at a place where he had no right to be nor where appellant owed him no duty.

The question whether speed in and of itself constituted actionable negligence has been discussed in many decisions. Our statute provides that no person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent under the conditions then existing (G. S. 1941 Supp. 8-532). Appellant directs our attention to and quotes at length from *Clark v. Southwestern Greyhound Lines*, 148 Kan. 155, 79 P. 2d 906, wherein it was held that speed of a bus was not the proximate cause of an accident. The rule as stated in that case is:

"The mere violation of a statute regulating speed is not in itself sufficient to make the operator of a motor vehicle guilty of actionable negligence in a collision of automobiles; to make him liable it must appear that the speed contributed to the collision and was the proximate cause of the injuries sustained. (Citing cases.)" (l. c. 159.)

And on the same point see *Dick's Transfer Co. v. Miller*, supra. The jury found the speed did contribute to the accident, and appellant filed no motion to have it set aside. On the contrary, he filed a motion to have judgment in his favor *non obstante veredicto*, a concession on his part that the answer was supported by the evi-

dence. See *Sams v. Commercial Standard Ins. Co.,* ante, p. 278, 139 P. 2d 859 (this day decided), and cases cited therein. And the record discloses evidence that speed was a proximate cause of the accident. Briefly the evidence was that defendant, driving fifty miles an hour, saw the cumbersome equipment driven by plaintiff come to a stop on the highway, and that although he saw or could have seen plaintiff, he did not decrease his speed, but continued it until the accident. It was inferable from the testimony that had he reduced his speed and had his car under better control, he could have stopped before reaching the point of impact or he could have driven his car either to the south side of the pavement, or out on the shoulder to the south, and have avoided the accident.

And finally, we notice appellant's contention that plaintiff was guilty of contributory negligence as a matter of law, and that his demurrer to plaintiff's evidence should have been sustained. Heretofore a review has been made of that evidence. When we view it in the light of the rule laid down for testing sufficiency of evidence on demurrer (see *Bessette v. Ernsting,* 155 Kan. 540, syl. ¶ 3, 127 P. 2d 438, and *Robinson v. Short,* 148 Kan. 134, syl. ¶ 1, 79 P. 2d 903) we are not concerned with any evidence of contrary effect nor with the jury's conclusions later made. Considered in every particular most favorable to plaintiff, the evidence disclosed that he descended from his machine at a time when defendant was six hundred feet away; that he walked close to his parked machine for a distance of thirty-five feet and while on his side of the highway was struck from the rear by the defendant who was then driving his car at a speed of fifty miles per hour; and that to the south of him one-half of a twenty-foot pavement was open for travel and to the south of the pavement was a four- or five-foot shoulder. Under the rule referred to, we cannot say that plaintiff was guilty of negligence as a matter of law.

We now consider plaintiff's cross-appeal, based on his contention the trial court erred in not allowing him a new trial limited solely to the question of his damages. In its memorandum opinion the trial court stated the motion was denied on the authority of *Friesen v. Western Grain Dealers Ins. Co.,* 119 Kan. 513, 240 Pac. 414, and *Paul v. Western Distributing Co.,* 142 Kan. 816, 52 P. 2d 379, by reason of the fact the damage sustained by plaintiff was so intimately connected with the other questions in the case, the amount of damages sustained by plaintiff could not be separately tried and

a just conclusion reached. After discussing other matters the trial court noted that neither party desired a new trial as to all issues. The trial court then expressed its satisfaction with the verdict and approved it and rendered judgment upon it. It would be a work of supererogation to repeat the very complete analysis of our cases made in *Paul v. Western Distributing Co.*, supra. We shall content ourselves by saying that case provides abundant authority to support the trial court's ruling.

We find no error in the judgment of the trial court and it is affirmed.