No. 40,475

JAMES DRYDEN, *Appellee,* v. O. H. ROGERS, *Appellant.*

(309 P. 2d 409)

Opinion filed April 6, 1957.

*Herbert H. Hopper,* of Wichita, argued the cause and was on the briefs for appellant.

*Robert L. Davis,* of Wichita, argued the cause, and *Carl H. Davis,* of Wichita, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to cancel and rescind a written lease on the grounds of misrepresentation and fraud, and for restitution of rent. Trial was had by the court, which rendered judgment for the plaintiff. The defendant has appealed.

We shall briefly summarize the evidence before the trial court, as follows: The plaintiff, James Dryden, in answer to a classified advertisement in a Wichita newspaper listing for lease a Zesto soft ice cream stand, telephoned the owner, O. H. Rogers, the defendant, and Dryden and his wife met Rogers at the stand where they spent an hour discussing the stand, which Rogers said was available at a monthly rent of either $250, or $180 plus a percentage of the profits. During the conversation Rogers made various statements to the Drydens to induce them to lease the stand, and explained why it was vacant. These statements as testified to by the Drydens, concerned the profits of prior tenants, and Rogers said, "The fellow that was in here last year, he had it on a percentage basis and in the month of June, of the year before, the $180 plus percentage brought me $500 for the month's rent." Rogers further stated this tenant had worked at Steffens but had leased the stand for his two sons who did not pay any attention to business and that he gave the stand up in June, having made $7,000 during the three month's operations. Rogers also said, "Another fellow that was in here bought a new home and a car with the profit he made off of this place." Rogers further stated to the Drydens that the stand had a good trade in sandwiches and coffee during the winter months; that the rent he was asking was the cheapest in Wichita, and that it was customary for a tenant to pay in advance the rent for the three final months of the lease term.

The following day the Drydens secured a loan from their banker sufficient to enter into the lease with Rogers. The next day Dryden saw Rogers and agreed to take the stand, and a written lease was entered into on March 1, 1955, calling for annual rental of $3,000, payable at the rate of $250 per month. On that date, Dryden paid Rogers $1506.80: $1,000 advance rental for the first month and the last three months of the lease term, $200 security deposit, and $306.80 for the inventory of supplies.

The Drydens operated the stand daily from March 3, 1955, through June, 1955, but had to borrow money each month to make the rent payment. Unable to pay the July, 1955, rental, the Drydens did not open the stand for business on July 4, 1955. On July 11, 1955, Rogers told Dryden to pay the July rent in weekly install-ments. On that date the stand was reopened upon payment by Dryden to Rogers of $100 in cash, and Rogers left Wichita for his summer cottage in Arkansas. On July 18, 1955, a weekly payment of $50 was made to Rogers' daughter Geraldine, and when the July 25, 1955, rental payment was not made, Rogers, through his daughter, served notice upon the Drydens to vacate, and on July 29, they cleaned up the equipment and vacated the Zesto stand.

While operating the stand and after June, 1955, Dryden ascer-tained the names of the prior tenants. After the Zesto stand failed to make a profit during the summer months, Dryden sought out the prior tenants only to learn that Max Jester, the tenant who had the stand during the spring of 1954 and who had worked at Steffens, had lost about $1200 on the stand, and that Harold Ahlf, the tenant who had the stand during 1953, had also lost a great deal of money; that neither of those tenants had purchased a new house or car and that neither of them had paid Rogers $500 rent during any one month. Dryden also learned that other statements made by the defendant were false and untrue.

After hearing the evidence and arguments of counsel the trial court found generally for the plaintiff and by reason of defendant's fraud, the lease between plaintiff and defendant was ordered can-celed and plaintiff was granted judgment of $2100 for the rent previously paid to Rogers.

The action was tried by the trial court without a jury. Neither party requested special findings, hence the judgment of the trial court was a general finding in favor of the plaintiff and granted him the relief sought.

We first consider defendant's first and third specifications of error. The first is that the trial court erred in overruling his demurrer to plaintiff's evidence, and the third is that it erred in overruling his motion for a new trial. The defendant did not appeal from either of those orders, consequently, they are not before this court for appellate review (Baker v. Maguire's, Inc., 176 Kan. 579, 272 P. 2d 739; Nicholas v. Latham, 179 Kan. 348, 295 P. 2d 631). His appeal is only from the order of the trial court of May 8, 1956, rendering

judgment that the lease between the parties be canceled and that plaintiff recover $2100, with interest, and costs of the action. No effort was made by defendant to amend his notice of appeal, as authorized by G. S. 1949, 60-3310, and thus broaden its scope to include the contention made here.

We next refer to defendant's second and fourth specifications of error. The second is that the decision of the trial court is contrary to the evidence, and the fourth is that there is insufficient evidence that plaintiff relied upon the alleged fraudulent statements. These specifications of error will be considered together since to answer the second is to answer the fourth, and it is sufficient to say that defendant's appeal presents but the single question of whether there is substantial competent evidence to support the trial court's finding and judgment in favor of plaintiff.

The long-established rule of this jurisdiction is that "a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced," (*Sledd v. Munsell*, 149 Kan. 110, 86 P. 2d 567) and that a general finding by the trial court raises a presumption that it found all facts necessary to sustain and support the judgment (*Kennedy v. Spalding*, 143 Kan. 76, 53 P. 2d 804; *Stromquist v. Nelson*, 159 Kan. 716, 158 P. 2d 458; *Briscoe v. Reschke*, 170 Kan. 367, 226 P. 2d 255; *Beye v. Andres*, 179 Kan. 502, 296 P. 2d 1049).

In considering the evidence on appellate review, we note the repeated holdings of this court, that a verdict, or finding of fact made by the trier of the facts and supported by the evidence will not be disturbed on appeal (2 West's Kansas Digest, Appeal & Error, §§ 1001-1013; 1 Hatcher's Kansas Digest, Appeal & Error, §§ 495-508), and that a finding of fact necessarily embraced in the general judgment rendered by the trial court, will not be disturbed if there is some though controverted evidence to sustain it (*Stratton v. Hawks*, 43 Kan. 538, 23 Pac. 591; *Hoff v. Hoff*, 106 Kan. 542, 189 Pac. 613; *Hale v. Ziegler*, 180 Kan. 249, 303 P. 2d 190).

At the trial considerable evidence was introduced by the plaintiff and defendant but no useful purpose would be served in detailing or making further summary of it. It is sufficient to say that the evidence was conflicting and the trial court's judgment had implicit in it a finding that, by reason of defendant's fraud, the lease between the plaintiff and defendant should be canceled and that plaintiff should have restitution of $2100 rent paid to defendant thereunder.

A careful and extended review of the record has been made and we conclude there was substantial competent evidence to support the trial court's judgment. The judgment is affirmed.