No. 41,057

ADOLF REDMAN, *Appellant,* v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, a Corporation, *Appellee.*

(327 P. 2d 854)

Opinion filed July 7, 1958.

*Joseph P. Jenkins,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Albert M. Ross,* and *Thomas H. Finigan,* all of Kansas City, were with him on the briefs for the appellant.

*Robert H. Bingham,* of Kansas City, and *Henry G. Eager,* of Kansas City, Missouri, argued the cause, and *John C. Thurlo,* of Kansas City, Missouri, and *J. J. Freeman,* of Omaha, Nebraska, of Counsel, were with them on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action for specific performance of an alleged contract to issue a health and accident insurance policy and to recover a money judgment in accord with the terms of such policy for a sustained disability. After a full and complete trial by the court judgment was rendered for the defendant and the plaintiff appealed.

The pleadings are not in controversy and, for that reason, allegations thereof will be highly summarized and limited strictly to matters disclosing the claims of the respective parties.

Pertinent portions of the amended petition and an amendment thereto, on which the cause went to trial, can be stated thus: On

October 19, 1953, Joseph E. Allen, a licensed resident agent of defendant, authorized to solicit applications for insurance to be written by defendant and to receive checks payable to defendant for the first year's premium thereon, approached plaintiff at his home in Kansas City and solicited his application for a health and accident disability policy, stating orally that if the annual premium for such policy was paid at the time the application was made, such policy, if issued, would be dated from and cover the plaintiff from the date of the application; plaintiff agreed to make the application; thereupon the application was prepared by Allen and presented to the plaintiff who signed it and then delivered it along with his check for the annual premium to the agent; Allen took the check and application and delivered both instruments to defendant's divisional office, the Frank L. Stephens Insurance Agency; upon receipt of such instruments the agency endorsed the check, deposited it in the bank, and caused it to be paid out of the plaintiff's account in the bank on which it was drawn.

Further allegations of the amended petition and the amendment thereto are: That defendant at its home office in Omaha, or at the office of its agent in Kansas City, held the application in its possession for an unreasonable length of time without delivering plaintiff the policy applied for, and without ever giving him any notice it declined to issue such policy and rejected said application; that defendant did not notify plaintiff of its decision either to issue such policy or not to issue the same until long after plaintiff sustained an accident resulting in disability; that by its delay in notifying plaintiff either as to acceptance or rejection of the application defendant in effect and in law accepted said application and became liable to plaintiff to issue and deliver the policy at a time prior to plaintiff's accident, and by presumption of law impliedly accepted such application long prior to the time he sustained his injuries; that the conduct and delay of the defendant as alleged led plaintiff to believe his application had been accepted and that he would receive a policy dated from the day on which he had delivered the check; and that plaintiff thus believing was prevented and obstructed from applying for and obtaining similar insurance and, but for being mislead into thinking his application had been accepted, could have obtained other insurance of like kind prior to the time of his accident.

Further allegations of such pleadings are: That on December 15,

1953, plaintiff sustained total disability by reason of accidental bodily injuries and since that date has been totally disabled therefrom; that due proof of the sustaining of such injuries was made to defendant, which neglected and refused to make any payments under the policy for such disability; that on March 18, 1954, defendant, by and through the Stephens Agency, notified plaintiff in writing that his application for insurance had been rejected and denied all obligation to issue plaintiff a policy of insurance under such application; that defendant has failed to issue and deliver the policy; and that plaintiff is without relief at law and therefore demands specific performance of defendant's obligation to issue such policy.

Finally it is to be noted that, after alleging the statement is included therein to comply with the court's order in connection with a motion lodged against the petition, the amended petition states "that at the time the application was taken there was no express agreement, oral or in writing, that the policy would be issued by the defendant, but the plaintiff says that under the facts above alleged the defendant impliedly agreed either to reject the application or to issue the policy and to give notice thereof to the plaintiff within a reasonable time after such application was made."

Summarized in the manner heretofore indicated the defendant's answer contains:

Admissions that Allen was its soliciting agent and salesman on October 19, 1953; that on such date plaintiff signed and executed a written application for health and accident insurance and delivered such application to Allen with his personal check in the amount of the first full annual premium for the policy applied for; that the application and check was delivered to the Stephens Agency and the check subsequently cashed; that it never issued or delivered a policy of insurance by reason of the application; and that both before and after the institution of the action it has and now declines to pay any sum or sums whatsoever by reason of plaintiff's application for insurance or his claim for total and continuous disability resulting from and by reason of accidental bodily injuries.

Full and complete denials of each and all other factual statements and claims made, set forth and relied on by plaintiff in the amended petition, and the amendment thereto, as grounds for recovery.

And, without reciting all averments therein set forth and relied

on by way of defense, allegations to the effect that plaintiff's application for insurance was duly rejected, refused and declined in its Underwriting Department in Omaha by reason of his uninsurability; that notices of the rejection of such application and a return of the advanced premium were sent and made to plaintiff within a reasonable time, and prior to December 15, 1953; that no contract either express, implied or otherwise ever existed between plaintiff and defendant by reason of the application for insurance; and that, under the facts and circumstances as alleged, plaintiff should be denied all relief sought in the action and judgment rendered for defendant.

Plaintiff's reply to the answer contains a general denial and allegations charging that defendant's offer to return the advanced premium was not made until long after he had received the injuries mentioned in his pleadings, and after defendant had received notice and claim of such injuries.

With issues joined as heretofore stated the case was tried by the court which, after introduction of evidence by the parties and argument of counsel, took the cause under advisement. What happened thereafter will be related, without comment, from the record submitted. It discloses:

1. That on August 23, 1957, the court by a letter, in which it enclosed its findings of fact and conclusions of law, advised counsel for the parties it had decided judgment should be entered in favor of the defendant and that it would enter such judgment as of the date an approved journal entry was submitted.

2. That on August 26, 1957, plaintiff filed a motion for a new trial; a motion to set aside findings of fact and conclusions of law; and a motion to amend paragraph 5 of the findings of fact.

3. That on September 9, 1957, the court, without ruling on the foregoing motions, made and entered its findings of fact and conclusions of law and thereupon rendered judgment in favor of defendant and against plaintiff for the costs of the action.

4. That on September 11, 1957, defendant filed a motion to amend, enlarge and make additional findings of fact and conclusions of law.

5. That on October 30, 1957, the court, again by letter, advised counsel for the parties of its intended rulings, presently to be mentioned, with respect to the motions mentioned in preceding paragraphs numbered 2 and 4.

6. That on the same day, notwithstanding a discrepancy in the journal entry indicating its action was taken prior to that date, the trial court overruled and denied plaintiff's motions for a new trial, to amend findings of fact and conclusions of law to set aside the findings of fact and conclusions of

law. It also sustained a portion of defendant's motion to amend and enlarge the findings of fact and conclusions of law. In connection with the latter ruling it added fifteen words to the last sentence of finding of fact No. 14 and then deleted the first sentence (eight words) of finding No. 15 on the basis it was superfluous by reason of the amendment to finding No. 14.

Following the action, last above indicated, and on December 23, 1957, plaintiff gave notice that he was appealing from all rulings and decisions (specifying them) made and entered by the trial court on October 30, 1957.

It is obvious that what has been stated up to this point is not sufficient to give readers of this opinion a proper understanding of the basic facts on which the rights of the respective litigants depend. We are constrained to state that our task in this respect has been made difficult by the parties themselves, who have disregarded requirements of our Rule 6(3) (c) and (4) (b) and so slanted their respective briefs with biased versions of the import to be given their own evidence as to preclude our making a proper statement of the essential facts of the case without making a detailed and tedious review of a long, confusing and somewhat incomprehensive record. We are neither disposed nor required to assume that burden. Therefore since the trial court's findings of fact and conclusions of law are involved on appellate review, give its version of the factual situation disclosed by the evidence, and when carefully analyzed and read in connection with what has been heretofore stated suffice to give a fair understanding of what the case is about, we have decided to use such findings and conclusions to implement what would otherwise, for reasons heretofore noted, result in a somewhat vague and incomplete factual statement. Such findings of fact and conclusions of law, keeping in mind that the portion of finding No. 14, enclosed by brackets, is the addition made to that finding and the portion of finding No. 15, likewise enclosed, is the language deleted from that finding, read:

"FINDINGS OF FACT.

"1. From December 21, 1934, to December 15, 1953, the plaintiff was totally, wholly, and continuously disabled from engaging in his trade of cabinet making and carpentry due to a severe laceration to his left hand sustained in a power saw accident.

"2. On October 19, 1953, the plaintiff's income was derived mainly from investments and a 340-acre farm in Western Kansas. The soliciting agent, Joseph Allen, knew this and knew of plaintiff's injured left hand when he took the application (Ex. 1) on October 19, 1953.

"3. Plaintiff suffered and complained of shortness of breath and periodic shooting pains in his back and chest prior to 1953, and particularly during 1948 after John M. Gineau's assault on him. Neither Joseph Allen nor defendant had any knowledge of this on October 19, 1953.

"4. Prior to December 15, 1953, the plaintiff suffered, in addition to the laceration and tremor of his left hand, certain tremors in his neck and right hand.

"5. When the plaintiff signed the printed application (Ex. 1) on October 19, 1953, he believed that he was applying for and reasonably expected to receive, subject to the approval and acceptance of defendant's home office, additional health and accident insurance of the same kind which he already had with defendant company, the policy to be effective as of October 19, 1953, and in form similar to the policy issued by the defendant to the plaintiff on February 1, 1953, except that the new policy would pay $300 monthly benefits in case of total disability.

"6. Joseph Allen was a soliciting agent for the defendant and was not empowered by the defendant to contract, to commit, or to incur liabilities on behalf of defendant except upon its later review and approval in its Omaha, Nebraska, home office.

"7. At the time of executing the application for insurance (Ex. 1) plaintiff delivered to Joseph Allen, the soliciting agent, his check for $312 in payment of the first year's premium on the insurance applied for.

"8. The application which plaintiff signed (Ex. 1) was in fact an application to defendant for insurance paying $100 per month benefits in case of total disability. The soliciting agent, Joseph Allen, copied the information from this application on an application form to United Benefit Life Insurance Company, applying for insurance from said company paying $200 per month benefits in case of total disability, and delivered the plaintiff's check and both applications to his employer, the Frank L. Stevens Agency. Joseph Allen, or some person in the employ of the Frank L. Stevens Agency, signed plaintiff's name on the application form to United Benefit Life Insurance Company. Thereafter the plaintiff's check was deposited to the credit of the Frank L. Stevens Agency and the applications were each forwarded to the home offices of the respective insurance companies.

"9. United Benefit Life Insurance Company is a companion insurance company to defendant, and its home offices are also located in Omaha, Nebraska.

"10. On or about November 3, 1953, the defendant's underwriting department in Omaha, Nebraska, after investigation and evaluation of the information it had concerning plaintiff, declined and refused plaintiff's application for insurance. About the same time the application to United Benefit Life Insurance Company was likewise declined and refused by that company.

"11. According to the records of the defendant company, written notice of its refusal to insure plaintiff was mailed in the regular course of business from defendant's home office to plaintiff on or about November 17, 1953. The plaintiff denies that he ever received such a notice.

"12. On or about November 10, 1953, Joseph Allen, the soliciting agent, was notified of the rejection of plaintiff's applications for insurance and instructed to return the premium paid. Instead of returning the premium, he

requested the defendant's underwriting department for a reconsideration, and was advised to submit additional information concerning plaintiff. Joseph Allen then called plaintiff about the request for additional information and plaintiff gave him the name of a bank for reference.

"13. The defendant thereafter in good faith investigated the plaintiff in order to obtain further and additional information as to his insurability, but refused to change its underwriting decision of November 3, 1953, and Joseph Allen was promptly notified of this by defendant on or about the 1st of December, 1953.

"14. On December 3, 1953, Joseph Allen obtained two checks from his employer, the Frank L. Stevens Agency, payable to the plaintiff in the total amount of $312 in refund of the premiums paid by plaintiff, and went to the plaintiff's residence to deliver them and advise plaintiff that his application for additional insurance had been refused. Plaintiff was not at home, so the checks and written notice of refusal were mailed to plaintiff from Allen's office in the normal course of business the same day, [and the said two checks and written notice of refusal were received by the plaintiff.]

"15. [Plaintiff denies receiving said checks and the notice.] The checks have never been presented for payment.

"16. Subsequently on February 12, 1954, the soliciting agent, Joseph Allen, obtained two more checks from the Frank L. Stevens Agency payable to plaintiff in the total sum of $312 and tendered the same to the plaintiff in refund of the premium paid by plaintiff. This tender was refused by the plaintiff.

"17. Defendant has subsequently offered and tendered and presently offers and tenders to plaintiff a refund of the premiums paid by plaintiff in the amount of $312, together with interest at the rate of six per cent per annum. Plaintiff has refused such tenders.

"18. On December 15, 1953, the plaintiff fell on a sidewalk in Kansas City, Kansas, and was subsequently hospitalized and under a doctor's care. His disability and physical inability to work subsequent to that date is due to heart trouble, which condition manifests itself as angina pectoris.

"CONCLUSIONS OF LAW

"1. Defendant's agent Allen was a soliciting or collecting agent and not a general or countersigning agent.

"2. This action is upon a contract remedy.

"3. At no time has the defendant, by implication or otherwise, accepted the plaintiff's application for insurance dated October 19, 1953.

"4. Under the facts and circumstances as disclosed by the evidence in this case, the time spent by the defendant in its investigation of plaintiff's insurability was not an unreasonable length of time.

"5. No action or conduct upon the part of the defendant reasonably misled or harmed the plaintiff to his detriment, and the defendant is not now estopped or precluded from establishing that it affirmatively rejected and declined the application in question.

"6. The plaintiff was not injured or damaged as a proximate cause of the defendant's actions or conduct in respect to the said application for disability and health insurance.

"7. The plaintiff has failed to sustain his necessary burden of proof as to the various elements of his claims herein."

Preliminary to consideration of other issues involved it should be stated at this point that we are at a loss to understand why appellant devotes time and space in his brief to the question whether he may maintain the instant action in its present form. Appellee makes no claim that he had no right to do so and we find nothing in the record to indicate the trial court's rulings and judgment were based on that premise. In such a situation that question is not here and it is neither necessary nor required that we prolong this opinion by a discussion of arguments raised by appellant with respect thereto.

The first claim of error raised in appellant's brief is that the court erred in finding that a period of fifty-seven days was not an unreasonable length of time to delay the issuance of a health and accident insurance policy pursuant to the soliciting agent's representations and the application executed by appellant on October 19, 1953, and prior to his accident on December 15, 1953. The short and simple answer to this contention is that reference to the findings discloses the court made no such finding.

In connection with the same question, and based on the same erroneous assumption as to the state of the findings, it is argued that appellee is estopped to deny that it had issued a policy pursuant to the application and is deemed to have waived its right to refuse to issue a policy by failing to notify appellant of its purported denial of coverage within a reasonable time. Conceding the appellee was bound to act upon appellant's application one way or another within a reasonable time the question of what was a reasonable time, as held in *Harvey v. United Ins. Co.,* 173 Kan. 227, 245 P. 2d 1185, was for the trier of facts. Resort to the findings clearly reveals the court, while acting in that capacity, concluded that under the evidence of record the appellee had not only declined to insure appellant but had also notified him to that effect on more than one occasion prior to the accident, the last time being on December 3, 1953; and that appellee's action in that respect was within a reasonable time under the existing facts and circumstances. Treating this contention as directed against the findings as actually made it lacks merit and cannot be upheld if such findings are supported by evidence.

After a careful and extended examination of the record we have

concluded that under the issues joined by the pleadings, as well as the theory on which it was presented and tried, this is primarily a fact case where the appellant's right to the relief sought in his petition was not only fairly submitted but conscientiously determined by the court in accord with its version of the credence and import to be given the evidence presented by the respective parties.

Thus we come to what both the appellant and appellee concede in their briefs, and we from our examination of the record have decided, is the all decisive issue involved in this case. Such issue, we pause here to note, underlies all questions raised, regardless of how they are presented and argued, by the parties relating to the propriety of the trial court's judgment. Simply stated that question is: Are the trial court's findings sustained by the evidence? In approaching the question just posed it must be remembered that no rule in this jurisdiction is better established than the one that, when supported by competent evidence, a trial court's findings of fact are conclusive and will not be disturbed on appellate review even though the record discloses conflicting evidence which, if that tribunal had seen fit to believe it, might have warranted entirely different findings of fact and a contrary judgment. For some of our more recent decisions where this rule is considered, discussed, applied and adhered to see *Paul v. Paul,* 183 Kan. 201, 326 P. 2d 283; *Lowdermilk v. Lowdermilk,* 183 Kan. 174, 181, 182, 326 P. 2d 248; *Norris v. Nitsch,* 183 Kan. 86, 325 P. 2d 326; *In re Estate of Guest,* 182 Kan. 760, 324 P. 2d 184; *Grace v. Martin,* 182 Kan. 33, 318 P. 2d 1007; *Fitzwater v. Boeing Airplane Co.,* 181 Kan. 158, 309 P. 2d 681; *Dryden v. Rogers,* 181 Kan. 154, 157, 309 P. 2d 409; *Wood v. Board of County Commissioners,* 181 Kan. 76, 309 P. 2d 671. Numerous other decisions of like import are cited in Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error §§ 507, 508; West's Kansas Digest, Appeal & Error, §§ 1010[1], 1011[1].

Touching the sufficiency of the evidence to support the findings of fact, as heretofore quoted, it would add nothing to our reports and we are not disposed to labor a long and tedious record. It suffices to say that after a painstaking and extended review of the testimony of all the witnesses involved in the case, we are constrained to hold the record is replete with substantial competent evidence to support each and every finding made by the trial court. The result, as we have heretofore indicated, is that such findings must be accepted as true and cannot be disturbed.

In passing we note appellant assigns, but does not argue, error in the overruling of that portion of its motion relating to the setting aside of its conclusions of law. This, no doubt, is due to the fact that his counsel, with commendable candor, includes in his brief a statement to the effect he concedes that if this court is satisfied the judgment of the trial court is supported by evidence such judgment will not be disturbed on appeal. It should perhaps be added, that even in the absence of this commendatory concession, this court would have no difficulty in concluding that the findings which, we are forced to accept in view of the fact there is evidence to support them, were sufficient to warrant the trial court's conclusions of law and its subsequent judgment.

After having given careful consideration to all contentions advanced by appellant we find nothing in the record presented which warrants a reversal of the involved judgment. Moreover, what has been heretofore stated and held requires that it be affirmed.

It is so ordered.