No. 43,133

ROBERT BLACKBURN, *Appellee,* v. JOHN COLVIN, *Appellant.*

(380 P. 2d 432)

Opinion filed April 6, 1963.

*Lewis Sanders,* of Kansas City, Missouri, argued the cause, and *Paul H. Niewald,* of Kansas City, Missouri, and *A. J. Herrod,* of Kansas City, were with him on the briefs for appellant.

*Joseph T. Carey,* of Kansas City, argued the cause, and *David W. Carson, John K. Dear, Ernest N. Yarnevich, J. W. Mahoney* and *John H. Fields,* of Kansas City, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action for damages sustained by the plaintiff in the partially constructed home of the defendant. The case was tried to a jury which returned its verdict in favor of the plaintiff for $7,000 and answered special questions. The district court approved the verdict and entered judgment thereon in favor of the plaintiff.

The defendant makes eight assignments of error, but briefs and argues only three. Under such circumstances, the assignments of error not briefed or argued are considered abandoned and on appeal will not be reviewed or considered. (*Brent v. McDonald,* 180 Kan. 142, 300 P. 2d 396.) The three assignments of error briefed and argued are (1) the overruling of the defendant's demurrer to plaintiff's evidence; (2) whether the court's instructions properly submitted the issue of willful, intentional or reckless acts on the part of the defendant, and (3) whether the jury's special findings of fact are inconsistent with each other and of such nature that they should control the general verdict and require judgment for the defendant.

With respect to the first assignment of error, at the close of the plaintiff's evidence the defendant interposed a demurrer thereto upon various grounds, one being that the evidence showed the plaintiff was a mere licensee and the evidence failed to show that the defendant willfully, intentionally or recklessly injured the plaintiff, and that the dangerous condition, if any existed, was obvious to the plaintiff and that he was guilty of contributory negligence as a matter of law. The demurrer was overruled and the defendant announced he would offer no evidence but would stand on the demurrer. Thereafter, the defendant moved for judgment on the

pleadings and evidence for the reasons given in support of the demurrer. The motion was overruled, and the cause was submitted to the jury upon the plaintiff's evidence.

In his notice of appeal, the defendant did not include the orders overruling his demurrer to plaintiff's evidence or overruling his motion for a directed verdict, but he did include the order overruling his motion for a new trial. Among other things, the motion for a new trial contained as grounds therefor the overruling of the defendant's demurrer to plaintiff's evidence and the overruling of his motion for a directed verdict. Under such circumstances, neither the order overruling the demurrer to plaintiff's evidence nor the order overruling the motion for a directed verdict is presented for appellate review. In *Nicholas v. Latham*, 179 Kan. 348, 295 P. 2d 631, it was held:

"When a notice of appeal particularly specified the order of the trial court from which the appeal is made, but such notice does not include the ruling on a demurrer made during the trial, the order of the trial court overruling the demurrer is no part of the appeal and presents nothing for appellate review." (Syl. ¶ 1.)

This holding has been followed many times by this court. (*Pennington v. Kansas Turnpike Authority*, 180 Kan. 638, 639, 305 P. 2d 849; *Dryden v. Rogers*, 181 Kan. 154, 156, 309 P. 2d 409; *Gaynes v. Wallingford*, 185 Kan. 655, 658, 347 P. 2d 458; *Rockhill, Administrator v. Tomasic*, 186 Kan. 599, 602, 352 P. 2d 444; *Schauf v. Peter Kiewit & Sons Co.*, 187 Kan. 180, 184, 354 P. 2d 687.)

Nor does the appeal from the order overruling the motion for a new trial under the circumstances here presented permit appellate review of the demurrer to the evidence or the motion for a directed verdict. An order overruling a demurrer to evidence is made separately appealable by the code of civil procedure (G. S. 1949, 60-3302, *Second*), and the rightness or wrongness of such an order is reviewed as a question of law and is not one which is proper to be included in a motion for a new trial. Hence, a ruling on a demurrer to evidence is not a trial error which requires a motion for a new trial as a condition for appellate review. In *Stock v. Union Pacific Railroad Co.*, 183 Kan. 659, 331 P. 2d 549, it was held that a motion for a new trial was neither necessary, proper nor essential to a review of the order sustaining a demurrer to plaintiff's evidence and the filing of such a motion did not extend the time for appeal from the order sustaining the demurrer or the judgment rendered pursuant thereto. See, also, *Andrews v. Hein*, 183 Kan. 751, 332 P.

2d 278, where it was held that a ruling on a demurrer to evidence is restricted to the evidence admitted and considered in ruling on the demurrer, and on appeal from such ruling, trial errors involved in the admission or rejection of evidence are not subject to review unless they are raised by a motion for a new trial. Obviously, that is not the case presented by this record. Thus, the question whether the plaintiff's evidence presented a submissible case to the jury on the issue of the defendant's breach of duty to refrain from willfully, intentionally or recklessly injuring the plaintiff is not before us for review.

The plaintiff's evidence is summarized: The plaintiff and defendant are brothers-in-law. The defendant was constructing a house which had been "roughed in" by a contractor. The plaintiff was helping the defendant finish the house in his spare time. Plaintiff had worked installing septic laterals and had helped felt in the roof. On or about November 10, 1957, plaintiff and defendant unloaded sheet rock at the defendant's house. Twenty-two sheets were placed on edge leaning against the living room wall. The sheet rock was 4 x 8 feet and ½ inch thick, and each sheet weighed 64 pounds, for a total of 1,408 pounds. The sheet rock was stacked with the bottom edge 8 to 12 inches from the wall. Two days before the accident, the defendant moved the stacked sheet rock out from the wall to facilitate his installation of furnace ducts. He constructed a "dead man" or a triangular brace out from the wall on which he stacked the sheet rock. A "dead man" is similar to the structure commonly seen at the end of a railroad track, used to keep cars from running off the track. Defendant laid the sheet rock over on the dead man while he worked on the furnace ducts and after completing the work, he stacked the sheet rock up against the wall again.

On Sunday, December 8, 1957, plaintiff and defendant went to the defendant's house at the defendant's invitation. They entered the living room and the defendant stood at the end of the stack of sheet rock and the plaintiff stood at the side of the stack. The plaintiff did not know that the defendant had moved the sheet rock and assumed that it was in the same position it was when he and the defendant stacked it. The defendant had built other houses and plaintiff assumed he knew how to safely stack sheet rock. The plaintiff observed the sheet rock in the same general area as it had been when he and the defendant stacked it. There was nothing to

indicate that the position had been changed and the only person who could have been expected to know that it was stacked too straight against the wall was the defendant who stacked it in that manner. The first plaintiff knew of danger was when someone hollered "look out" and the stack started to fall. He ran backwards but could not run fast enough, and he was pinned beneath the 1,408 pounds of sheet rock sustaining serious injury.

Following the accident, the defendant told plaintiff that the sheet rock fell because it had been "stacked up too straight against the wall."

W. G. Dagg, an expert on the storing and handling of sheet rock testified that he had been in the sheet rock business eight years and that his company handled an average of seven car loads of sheet rock per week, each load containing 1,440 pieces. He testified that sheet rock stored in a vertical or near vertical position is a constant danger. During his testimony he was taken through the operation of moving a stack of sheet rock, the bottom edge of which had been eight to twelve inches out from the wall onto a dead man, and then restacking it against the wall, and he stated that the bottom edge would end up three to five inches from the wall. He then stated that the minimum safe distance between the bottom edge of a vertical stack of sheet rock and the wall supporting it would be six inches. Also, that it would take a terrific force—possibly the force of two men—to push over a stack of sheet rock that had been stacked in the manner the plaintiff and the defendant stacked it before it was moved by the defendant.

The defendant contends the district court's instructions erroneously commingled and interchanged "willful, intentional or reckless acts" with negligence, and that they did nothing but serve to confuse the jury. Specifically, he complains of instructions Nos. 9, 11 and subparagraph 2 of instruction No. 12. He also objected to the giving of instructions Nos. 13 and 18, but his brief fails to mention those objections and we consider them abandoned. (*Carpenter v. Strimple*, 190 Kan. 33, 37, 372 P. 2d 571.)

When the district court overruled the defendant's demurrer to plaintiff's evidence, it announced it would instruct the jury that the plaintiff was a licensee on defendant's premises. Accordingly, the jury was instructed on that basis. In all, the court gave 24 instructions which, under all the facts and circumstances and when considered as a whole and in the light of each other, fairly presented

the issues covered by the pleadings upon which evidence was introduced. It is unnecessary to detail the instructions at length but suffice it to say they have all been carefully examined and it cannot be said they did not properly define the defendant's duty as being the duty to refrain from willfully, intentionally or recklessly injuring the plaintiff while he was on the defendant's premises, as set out in *Steinmeyer v. McPherson*, 171 Kan. 275, 232 P. 2d 236; *Backman v. Vickers Petroleum Co.*, 187 Kan. 448, 357 P. 2d 748; and *Hogan v. Hess Construction Co.*, 187 Kan. 559, 358 P. 2d 755. However, we shall briefly discuss instructions Nos. 9, 11 and subparagraph 2 of instruction No. 12.

Instruction No. 9 clearly defined the defendant's duty to the plaintiff as a licensee while on the defendant's premises and that failure to perform that duty on the part of the defendant would constitute negligence as would entitle plaintiff to recover if such negligence was the proximate cause of plaintiff's injury; further, that failure on the part of the plaintiff to so prove by a preponderance of the evidence would render no cause of action and the verdict should be for the defendant.

It is contended that instruction No. 11 was erroneous since the words "or should have known" could refer only to negligence because such words are not properly an element of willful, reckless or intentional act. The point is not well taken. Instruction No. 11 further advised the jury with respect to instruction No. 8 which defined willful, intentional and reckless negligence, that if it found the defendant knew "or should have known" of the dangerous condition of his premises then it might consider his failure to warn the plaintiff, if it found he did not warn the plaintiff of the dangerous condition, as constituting an *element* of willful, intentional or reckless negligence. The court was dealing with undisputed evidence that the defendant had created "a dangerous condition on his premises." Moreover, the defendant's statement that it was "stacked up too straight against the wall" established he knew he had created the dangerous condition. If the defendant did not know of the dangerous condition he could have taken the stand and denied that knowledge, but he was present in the court room throughout the trial and offered no evidence. The failure of a party to throw light upon an issue particularly within his own knowledge raises a presumption that the concealed information is unfavorable to him. (*In re Estate of Grisell*, 176 Kan. 209, 214, 270 P. 2d 285, and cases cited.) While the court might well have omitted the words "or should have known"

from instruction No. 11, we do not think that under the evidence it was prejudicial to the defendant.

Instruction No. 12 informed the jury that the burden of proof was upon the plaintiff to prove to its satisfaction by a preponderance of all the evidence substantially as alleged in his petition, and sub-paragraph 2 stated,

"That such injuries, if any you find, were caused solely by some omission or act of negligence on the part of the defendant as set out specifically in instruction Number One."

Instruction No. 1 set forth the amended petition which alleged that the defendant was "careless, reckless and negligent" in six specific respects. It is contended that the words "by some omission or act of negligence . . . as set out specifically in Instruction One" refer only to negligence which precluded the plaintiff from recovering for reckless, willful or intentional negligence. We do not agree. The allegations of the petition as set forth in instruction No. 1 were sufficient to submit to the jury whether the defendant was guilty of reckless conduct which was the proximate cause of plaintiff's injuries, and was sufficient to support the general verdict in favor of the plaintiff.

The defendant lastly contends that the jury's special findings of fact are inconsistent with each other and with the general verdict and are of such nature that they control the general verdict and require judgment for the defendant.

As previously indicated, the jury returned a general verdict in favor of the plaintiff. When the case was submitted, the court submitted two special questions to the jury and those questions and the jury's answers are as follows:

"1. Was the defendant guilty of any wilful, intentional or reckless act that caused the sheet rock to fall? Answer: Yes. 2. If you answer Question 1 in the affirmative, then state what act or acts he was guilty of? Answer: Defendant knew or should have known of the dangerous condition of his premises and did not warn the plaintiff of this dangerous condition."

The defendant argues that special question No. 1 inquired of the jury whether any act of the defendant caused the sheet rock to fall, to which the jury answered "yes," and that in its answer to special question No. 2, the jury stated such act consisted of failure to warn plaintiff of the dangerout condition, and he asserts that obviously a failure to warn the plaintiff of a condition could not have caused the sheet rock to fall. It is further contended the jury's answer to special question No. 2 related only to a finding

of negligence because it referred to a condition which the jury said the defendant "should have known," relying on *Elliott v. Peters,* 163 Kan. 631, 185 P. 2d 139. The case is not helpful. It involved the sustaining of a demurrer to a petition attempting to allege gross and wanton negligence as used in our guest statute. (G. S. 1949, 8-122b.)

Under our decisions a general verdict imports a finding upon all the issues of the case not inconsistent with the answers to special questions submitted, and such special findings are to be given such construction as will bring them in harmony with the general verdict. (*Kitchen v. Lasley Co.,* 186 Kan. 24, 348 P. 2d 588.) While nothing will be presumed in favor of special findings as against the general verdict, it has been said the special findings may be reviewed and interpreted in the light of the testimony. (*Schroeder v. Nelson,* 157 Kan. 320, 139 P. 2d 868.) Moreover, special findings are to be construed liberally with a view of ascertaining the intent of the jury; special findings are to be given the meaning intended even though unskillfully expressed, and liberalities of construction should be indulged in order to avoid inconsistency between the findings and the verdict and to uphold the verdict. (*Epple v. Kress & Co.,* 187 Kan. 452, 457, 357 P. 2d 828, and cases cited.)

In order for the plaintiff to recover, it was not necessary that his evidence establish a formal and direct intention to injure any particular person. It was sufficient if it indicated that degree of indifference to the rights of others which may justly be characterized as reckless. Reckless is an indifference whether wrong is done or not—an indifference to the rights of others. (*Stout v. Gallemore,* 138 Kan. 385, 391, 26 P. 2d 573.) In popular use and by our decisions "recklessness" is a stronger term than mere or ordinary negligence. (*K. P. Rly. Co. v. Whipple,* 39 Kan. 351, 18 Pac. 730.) In *State v. Custer,* 129 Kan. 381, 282 Pac. 1071, it was said:

". . . To be reckless, conduct must be such as to evince disregard of or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended." (l. c. 395.)

It was the province of the jury to weigh all the evidence and draw inferences and conclusions therefrom, (*Hutchens v. McClure,* 176 Kan. 43, 46, 269 P. 2d 473; *Bishop v. Huffman,* 177 Kan. 256, 278 P. 2d 588), and it had the right to draw the inference that when the defendant restacked the sheet rock he did it in such a manner

as to evince disregard of or indifference to the probable or possible injurious consequences, although he intended no harm.

The general verdict is to be regarded as based on whatever substantial testimony there may be tending to sustain it. It is clear that by the jury's answer to special question No. 1, the defendant was found to be guilty of a willful, intentional or reckless act that caused the sheet rock to fall. In accordance with the rule that a general verdict imports a finding upon all issues of the case not inconsistent with the answers to special questions submitted, the general verdict is to be regarded as having found that the defendant "stacked the sheet rock up too straight against the wall." In construing the general verdict with the answer to special question No. 2 and interpreting that answer liberally and in the light of the testimony with the view of ascertaining the jury's intent, we think it may fairly be said that the answer may be construed as a finding that the defendant stacked the sheet rock up too straight against the wall and that in doing so he knew of the dangerous condition thereby created on his premises and that he failed to warn the plaintiff. As thus construed, we find the answers to special questions to be not inconsistent with each other or with the general verdict.

The defendant cites and relies upon *Toomey v. Wickison Industrial Gas Co.*, 144 Kan. 534, 61 P. 2d 891, and *Backman v. Vickers Petroleum Co.*, supra. In the Backman case the pleadings and evidence were all based on alleged negligent acts. There was no claim or evidence or finding by a jury that the plaintiff's injuries were the result of any willful, intentional or reckless act or omission. The Toomey case may be distinguished in the same manner with the further distinguishing factor that the jury there found only negligence and that the plaintiff was familiar with the character of the work being performed and knew or had reasonable opportunity to ascertain the inherent and attending dangers.

We are of the opinion that the defendant has failed to affirmatively show that there was error committed by the district court which prejudicially affected his substantial right requiring a reversal of the judgment for the plaintiff. (*Blakely v. Zirkle*, 187 Kan. 562, 358 P. 2d 758.)

The judgment is affirmed.

PARKER, C. J., and PRICE, J., dissent from paragraph 4 of the syllabus and corresponding portions of the opinion.

SCHROEDER, J., dissenting: In my opinion the judgment in this case should be reversed on the answers given by the jury to the special questions.

Assuming other points presented by this appeal have been correctly decided by the court and that the jury was properly instructed, the first special question submitted to the jury called for a "yes" or "no" answer. The jury answered in the affirmative to the effect that the defendant was guilty of a willful, intentional or reckless act that caused the sheet rock to fall. This was a general finding by the jury, and before the plaintiff was entitled to recover in this action he was required to prove the defendant guilty of willful, intentional or reckless misconduct.

When the jury was asked to be more specific in question No. 2 by reason of an affirmative answer given to question No. 1, it answered, "Defendant knew or should have known of the dangerous condition of his premises and did not warn the plaintiff of this dangerous condition."

By no stretch of the imagination can the jury's specific answer to question No. 2 be construed as a matter of law to be a finding of willful, intentional or reckless misconduct. By its specific finding in answer to question No. 2, the jury found the defendant guilty of only *ordinary negligence.*

It has long been the rule of this court that general findings made by a jury in answer to special questions are controlled by specific findings of fact which are inconsistent with the general finding.

By reason of the foregoing the special findings do not support the general verdict for the plaintiff, and the general verdict cannot stand.

It is respectfully submitted the judgment of the lower court should be reversed.